UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>Defendant. | CASE NO. C08-5479BHS<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REQUESTING ADDITIONAL BRIEFING |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 65). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 31, 2008, Plaintiff Elaine L. Chao[1], Secretary of Labor, United States Department of Labor, filed a complaint against the State of Washington, Department of Social and Health Services ("DSHS"). Dkt. 1. Plaintiff seeks to enjoin Defendant from alleged violations of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq.*) ("FLSA"), and "for the recovery of a Judgment against Defendant for unpaid overtime compensation due Defendant's employees." *Id*. at 1. Plaintiff alleges that 1,502

---

[1] The caption has been changed to reflect the confirmation of Secretary Hilda L. Solis.

ORDER - 1

1  of Defendant's employees are due unpaid overtime.  *Id.*, Exh. 1.  Plaintiff has recently
2  filed a motion to amend that list to cover 1,965 of Defendant's employees.  *See* Dkt. 97.
3      On February 24, 2010, Defendant filed a Motion for Summary Judgment.  Dkt. 65.
4  On March 15, 2010, Plaintiff responded.  Dkt. 85.  On March 19, 2010, Defendant
5  replied.  Dkt. 89.

## II. FACTUAL BACKGROUND

**A.     DSHS**

    DSHS is a public agency created by the Washington legislature in 1970 to "integrate and coordinate all those activities involving provision of care for individuals who, as a result of their economic, social or health condition, require financial assistance, institutional care, rehabilitation or other social and health services."  RCW 43.20A.010.

    The mission of the Children's Administration within DSHS is to protect abused and neglected children. The social workers that work for the Children's Administration provide professional advice and support to families to safely care for and parent their children, and they provide quality care and permanent families for children, in partnership with parents, relatives, tribes, foster parents and communities.  These social workers implement many laws related to child protection and welfare.  Dkt. 67, Declaration of Sharon Gilbert ("Gilbert Decl."), ¶ 5.

    The Division of Children and Family Services ("DCFS") within the Children's Administration has social workers in 44 field offices who work to identify the needs of children and families and arrange for services to support them and to assure the safety and well-being of children.  The Children's Administration relies on the judgment of these social workers to reduce the risk of abuse, find safe alternatives to out-of-home placement, and assure safety and permanency for children living outside their family homes.  *Id.* ¶ 6.

    Children and families enter DCFS through three primary program areas: Child Protective Services ("CPS"), Child and Family Welfare Services ("CFWS"), and Family

1  Reconciliation Services ("FRS"). Social workers in these programs are responsible for
2  investigating child abuse and neglect, child protection, family preservation and
3  reconciliation, foster and group care, in-home and adoption services, and independent
4  living for children up to age 18. *Id*. ¶ 7.

5       CPS social workers provide intake, screening, and investigative services for
6  reports of alleged child abuse and neglect. They investigate appropriate referrals to assess
7  the safety and protection needs of children and, when necessary in their professional
8  judgment, intervene by providing services designed to increase safety and protect children
9  from further harm. *Id*. ¶ 8.

10       When social workers determine that children are in danger or have already been
11  abused or neglected, the social workers, with a police officer or court order, may place the
12  children with relatives or in foster care. Often, matters must be reviewed by a court,
13  which requires the social workers to prepare and present testimony. The court often relies
14  on the professional opinions of social workers in deciding whether to return the children
15  to their homes or to direct another placement. *Id*. ¶ 9.

16       CFWS social workers provide permanency planning and intensive treatment
17  services for families who need help protecting or parenting children. Most children
18  served by CFWS are dependents of the state and living out of their family homes. *Id*. ¶
19  10. The courts periodically review CFWS cases and rely on the professional opinion of
20  social workers in ordering permanent plans. *Id*.

21       FRS social workers supply voluntary in-home services focused on developing
22  skills and support within families to resolve problems of at-risk youth in need of services
23  or in family conflict. FRS social workers use their professional expertise to try to
24  maintain the family as a unit and prevent out-of-home placement of adolescents. *Id*. ¶ 11.

25  **B.**    **Hiring of Social Workers**

26       The main dispute in the instant motion is the educational qualifications of
27  Defendant's social workers. Defendant claims that "in 1998, [it] established rigorous
28

ORDER - 3

educational qualifications for those who wish to become [social workers]." Dkt. 68, Declaration of Debbie Cheney-Strange ("Strange Decl."), ¶ 5. Mrs. Strange, a Recruitment and Classification Manager for the Children's Administration, states that "all candidates must possess specific academic training, either at the undergraduate or graduate level." *Id.* ¶ 9. After hire, DSHS requires social workers to complete a course of specialized instruction before carrying cases and to take continuing education classes thereafter. Dkt. 66, Declaration of Marjorie Fitzgerald-Rinehart ("Rinehart Decl."), ¶¶ 5–10.

Defendant has submitted a document titled "DSHS Children's Administration Social Worker Series Required Education, Experience, Skills and Abilities." Strange Decl., Exh A. The document states that the minimum requirements for a Social Worker 2 are as follows:

> A Bachelor's degree or higher in social services, human services, behavioral sciences, or an allied field, and eighteen months as a Social Worker 1 since July 1, 1988.
> OR
> A Master's degree in social services, human services, behavioral sciences, or an allied field, and one year as a Social Worker 1 or equivalent paid social service experience.
> OR
> A Bachelor's degree or higher in social services, human services, behavioral sciences, or an allied field, and two years of paid social service experience performing functions equivalent to a Social Worker 1.
> ***
> NOTE: Employees must successfully complete the formal training course sponsored by their division within one year of their appointment.

*Id.* (emphasis in original). The minimum requirements for a Social Worker 3 are as follows:

> A Bachelor's degree or higher in social services, human services, behavioral sciences, or an allied field, and one year as a Social Worker 2 since July 1, 1988.
> OR
> A Master's degree in social services, human services, behavioral sciences, or an allied field, and two years of paid social service experience equivalent to a Social Worker 2.
> OR
> A Bachelor's degree or higher in social services, human services, behavioral sciences, or an allied field, and three years of paid social service experience performing functions equivalent to a Social Worker 2.

ORDER - 4

> One year of paid social service experience must include assessing risk and safety to children and providing direct family-centered practice services (strengthening and preserving family units).
>
> ***
>
> NOTE: Employees must successfully complete the formal training course sponsored by their division within one year of their appointment.

*Id*. (emphasis in original).

The parties dispute the scope of the term "allied field." Plaintiff submitted an interpretation of "allied field" from an encyclopedia (Dkt. 85 at 4) while Defendant submitted a document titled "Social Worker Minimum Qualifications Cheat Sheet." Strange Decl., Exh. 2. The relevant portion of the "cheat sheet" reads as follows:

> **Education/Degrees:**
> Social Services, human services, behavioral sciences or allied field (Not Social Science)
> **Acceptable**: Counseling, Psych, Social Work, Human Services, Sociology, Child Development, Family Studies, Pastoral Counseling, Anthropology, Gerontology, Therapeutic Recreation, Education, Therapeutic Fields, Criminal Justice.
> **Not Acceptable**: History, Economics, Civics, Philosophy, Communications, Archaeology, Nursing, Theology, Pastoral Studies, Religion, Recreation, Women's Studies, Native American Studies, Public Administration, Political Science, Law & Justice, Human Resources, Leisure Studies, Physical Education, Law Enforcement, Liberal Arts.
> (Note: These Courses would most often be acceptable under the broader heading of Social Sciences and upon review of transcripts if either 30 semester hours or 45 quarter credits were found that fall under Social Services, they could be accepted for Social Workers)
> Business Administration, Computer Sciences, Natural Sciences, Physical Sciences, Math, Fine Arts, General Studies.

*Id*. (emphasis in original).

Plaintiff claims that "Defendant's actual practice in hiring Social Workers confirms that a specialized academic background is not required . . . ." Dkt. 85 at 5. For example, Plaintiff states that "Social Worker Nora Benavidez had no college degree of any kind . . . yet was hired and promoted as a successful Social Worker for DSHS from 1991 until January 2008." *Id*. (citing Dkt. 86, Declaration of Evan H. Nordby ("Nordby Decl."), Exh. A.1).

ORDER - 5

**C.     DSHS Work Policy**

Although the general duties of social workers are the same, Defendant claims that the day-to-day work demands that social workers encounter can vary widely. Gilbert Decl., ¶ 14. For example, social workers spend their days in different settings and with different responsibilities: some keep a constant schedule while others have a variable schedule that depends upon the immediate demands of the job; some are members of specialty units while others carry a mixed caseload; some perform exclusively office work, while others work in the field; and some work in large concentrations (such as the Tacoma office) while others work in rural locations (like White Salmon) where there are few social workers. *Id*., ¶¶ 13-18.

With regard to overtime, Defendant claims that its social workers are represented by a union and have negotiated a collective bargaining agreement ("CBA") with DSHS. Gilbert Decl., ¶¶ 20-22. The CBA provides that the social workers are eligible for overtime if it is preapproved, worked, and reported in compliance with DSHS policy. *Id*., ¶ 23.

DSHS policy prohibits social workers from working unapproved overtime. *Id*. The policy states that, except in case of emergency, overtime that is not approved in advance is prohibited. *Id*. Defendant claims that if a social worker seeks approval to work overtime and the request is denied, the social worker is expected to prioritize his or her work in order to stay within 40 hours in the week. *Id*. Defendant also claims that it clearly articulates this overtime policy to its social workers. *Id*., ¶ 26. Moreover, DSHS supervisors expect social workers to avoid overtime in two ways: (1) by prioritizing their work, deferring tasks that can be completed until a later date, and (2) by "flexing" their time within the same week. *Id*., ¶ 27. For example, if a social worker works two extra hours on Monday, she might come in two hours later the next day, so that she does not work more than 40 hours that week. *Id*.

ORDER - 6

1    Plaintiff has submitted 29 declarations from former or current DSHS social
workers. Nordby Decl., Exhs. A.1–A.29. These social workers state that they regularly
cannot complete their assigned duties within a 40-hour work week. *See generally id.*
Moreover, DSHS regional administrators agree that the social workers' caseloads are
higher than ideal. *See* Nordby Decl., Exhs. E, G, and H.

**D.    FLSA and Supporting Regulations**

In general, an employer must pay each employee overtime compensation for all hours worked in excess of 40 hours in a week. 29 U.S.C. § 207(a)(1). Section 13(a)(1) of the FLSA provides an exemption from this overtime pay requirement for "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." *Id.* § 213(a)(1). As Congress has not defined the terms "executive," "administrative," or "professional," the Secretary of Labor has done so at 29 C.F.R. Part 541.

Under Part 541, the term "employee employed in a bona fide professional capacity" means an employee whose primary duty requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(b)(2)(i). The section entitled "Learned Professionals" reads in part as follows:

> (a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
>   (1) The employee must perform work requiring advanced knowledge;
>   (2) The advanced knowledge must be in a field of science or learning; and
>   (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

*Id.* § 541.301 ("learned professional exemption").

Defendant has submitted portions of the deposition of Plaintiff's 30(b)(6) witness, Ms. Donna M. Hart. *See* Dkt. 69, Declaration of Patrick Madden ("Madden Decl."), Exh I ("Plaintiff's 30(b)(6) Dep."). In that deposition, Plaintiff conceded that social workers

ORDER - 7

met the first two elements of the learned professional exemption.  First, Ms. Hart stated that the social work was "work requiring advanced knowledge" under Section 541.301(a)(1).  Plaintiff's 30(b)(6) Dep. at 227–228 (deposition pagination).  Second, Ms. Hart stated that social work required advanced knowledge in a "field of science or learning" under Section 541.301(a)(2).  Plaintiff's 30(b)(6) Dep. at 230–231 (deposition pagination).  Therefore, the remaining issue is whether Defendant's social workers possess "advanced knowledge [that] must be customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.301(a)(3).

The federal regulations further define the third element of the learned professional exemption as follows:

> The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

*Id.* § 541.301(d).

The Department of Labor has published two opinion letters that Defendant submitted with its motion.  Madden Decl., Exh. A (Wage Hour Opinion Letter, FLSA-2005-50, Nov. 4, 2005, *available at* 2005 WL 3308621 ("2005 Letter")) and Exh. B (Wage Hour Opinion Letter, Jan. 24, 2001 ("2001 Letter")).  The 2001 Letter, titled "Social Caseworkers/Professional Exemptions," addressed the question of "whether the

ORDER - 8

educational requirement for the Social Caseworker II and III positions satisfy the 'advanced learning' requirement for the professional exemption . . . ." 2001 Letter at 1. The job duties of the Caseworkers is similar to the job duties of Defendant's social workers; they investigate allegations of abuse and neglect, assess the needs of families and children, develop and recommend treatment and permanency plans, and make recommendations to courts regarding parental termination and adoptions. *Id*. In the letter, the Department of Labor found that Caseworkers had the requisite education to qualify as professionally exempt because the employer required "a master's degree in social work or human services, or a bachelor's degree in human behavioral science," together with specified work experience. *Id*. To meet the bachelor's degree in "human behavioral science" requirement, the Caseworker must have at least 30 semester hours or 40 quarter hours in one or more of ten enumerated areas related to social work. *Id*. The Department of Labor concluded that "Social Caseworker IIs and IIIs" with bachelor's degrees meet the professional exemption. *Id*.

The 2005 Letter reads in part as follows:

> This is in response to your letter requesting an opinion on the application of section 13(a)(1) of the Fair Labor Standards Act (FLSA) to certain employees of one of your clients, a private, non-profit, tax-exempt, multi-county social service agency. Your client's mission is to strengthen family life by providing counseling, education, and advocacy programs to individuals and families through the work of over 160 employees.
> The positions about which you inquire are Social Worker and Caseworker. You have included a job description of each, but do not indicate how they are paid or how much. You indicated that Social Workers must have a master's degree in social work, drug and alcohol, education, counseling, psychology, or criminal justice, plus two years of post-masters experience. Social Workers make independent decisions about the course of therapy best suited to the needs of individuals and families with whom they work. They may form an impression of the diagnosis, develop a treatment plan, and utilize a variety of therapeutic approaches to help clients resolve personal problems. Social Workers function as therapists and may provide 24-hour crisis services.
> Caseworkers must have a bachelor's degree in social sciences. You say that "Caseworkers in most Agency programs provide case management services such as providing in person supervision of volunteer-client matches or adoptive placements or facilitating services for adolescents in foster care who are being prepared for independence . . . . They may provide specialized services such as supportive, interactive or training groups for adolescents, volunteers or prospective caretakers. They may conduct

assessments or homestudies . . . . They may refer their clients to other community services . . . in the in-home counseling programs [they] perform the exact same duties as the Social Worker. They assess client needs; and provide therapy/counseling."

\*\*\*

The provisions of this exemption must be considered on an employee-by-employee basis. However, based on the information you have provided, those Social Workers with master's degrees who work in the field of their degree, will generally meet the above criteria. Social work conducted at this level requires advanced knowledge in a "field of science or learning" and has the recognized professional status required by the regulation. *See* WH Opinion Letters January 24, 2001 and March 30, 1999 (copies enclosed). Social Workers who meet these criteria and who are paid on a salary or fee basis of not less than $455 per week meet the requirements for the learned professional exemption of 29 C.F.R. § 541.300.

You have stated that the only academic requirement for the Agency's Caseworkers is a bachelor's degree in the social sciences. The course of study for a bachelor's degree in "social sciences" does not constitute the "specialized" academic training necessary to qualify an occupation for the learned professional exemption. Thus, specialized academic training is not a standard prerequisite for their employment. "[T]he learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, . . . . The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." 29 C.F.R. § 541.301(d). Only occupations that customarily require specialized academic training are considered learned professional fields under the regulations; occupations that do not customarily require specialized academic training at the level intended by the regulations as a standard prerequisite to enter the field do not qualify for the learned professional exemption. *Id*. Because you have stated that the occupation of Caseworker does not customarily require specialized academic training, since the only prerequisite for this occupation is a bachelor's degree in social sciences, we conclude that the Caseworkers do not meet the requirements of the learned professional exemption. Therefore, the Caseworkers are not exempt from the minimum wage and overtime requirements of the FLSA.

2005 Letter at 1-2.

**E.     Plaintiff's Investigation of Defendant's Social Workers**

In 2006, Plaintiff initiated an investigation of Defendant after receiving a complaint that one of Defendant's social workers in Walla Walla, Washington, worked uncompensated overtime. Madden Decl., Exh F (Deposition of Linda Asleson ("Asleson Dep.")), at 87:15-18. Plaintiff's investigator, Linda Asleson, initially focused on Walla Walla but later expanded her investigation to cover the entire state. *Id*. at 90:12-91:9, 99:10-25.

ORDER - 10

After her investigation, Ms. Asleson determined that Defendant's Social Workers II and III were not exempt professionals under the FLSA. *Id*. at 32:21-33:2. She testified that, in making her decision, she considered the social workers' duties, educational background and supervision. *Id*. 33:13-21. Her report reads, in part, as follows:

> The job announcements for level II/III require a B.A. in Social Services, level IV requires a MA, Ex D-7 thru D-9. Interviews indicate the majority of Social Workers at level II and III possess BA degrees and the minority have Masters. Supporting the non-exempt classification for level II/III is Wage Hour's Opinion letter dtd 11/4/05, Ex D-11, which states in part "The course of study for a bachelor's degree in "social sciences" does not constitute the "specialized" academic training necessary to qualify an occupation for the learned professional exemption.

*Id*., Ex. 21 at 1. Despite this written finding, Ms. Asleson admitted in her deposition that a majority of the social workers that she interviewed had master's degrees. *Id*. 65:17, 66:4, 67:13-68:3.

Ms. Asleson stated that "social sciences" meant the same thing as "social services" and "social work." *Id*. 73:1-23. She did not look up any of these terms in the dictionary, search the Internet, speak with her supervisors or consult with any lawyer at the Department of Labor. *Id*. at 75:15-76:17. She also did not attempt to ask any DSHS hiring manager about the process of screening social work applicants, nor did she discuss educational requirements with any social worker she interviewed. *Id*. at 83:15-23, 84:10-14. She ultimately confessed that she does not know what these terms mean, or what courses students need to take to get a degree in "social services, human services, behavioral sciences or an allied field." *Id*. at 84:15-85:8.

Department of Labor's expert, university professor Deirdre Bowen, explained the differences between "social science" and "social services." Ms. Bowen defined the former as "the study of the human world based on not individual behavior in an isolation but, rather, human behavior as it interacts with the social world and, conversely, how the social world then interacts with that individual." Madden Decl., Exh. J (Deposition of Diedre Bowen) at 266:22-267:2. Social science includes political science and economics, which obviously have little connection with social work. *Id*. at 267:7-8. On the other

ORDER - 11

1 hand, Ms. Bowen stated that "social services refer to governmental agencies that provide
2 support for particular institutional issues, like family school health, that its citizens need."
3 *Id*. at 268:9-12. Examples of social service degrees include social work, public health,
4 counseling, and drug rehabilitation. *Id*. at 268:13-23. She claims that social work would
5 be part of social services rather than social sciences. *Id*. at 268:24-269:5.

6 With regard to hours worked and reporting requirements, Plaintiff claims that
7 Defendant's "pay and timekeeping practices have the practical effect of denying Social
8 Workers compensation for all hours worked." Dkt. 85 at 9. On the other hand,
9 Defendant claims that it used "exception" timekeeping for social workers and that it paid
10 its social workers for all reported overtime hours. Gilbert Decl., ¶¶ 28, 30.

## III. DISCUSSION

Defendant requests summary judgment dismissing Plaintiff's claims in their entirety because Defendant's social workers fall within the Labor Act's professional exemption. Dkt. 65 at 11–16; Dkt. 89 at 2-8.

Alternatively, Defendant requests partial summary judgment dismissing: (1) Plaintiff's recordkeeping claims because Defendant kept records in compliance with Plaintiff's regulations; (2) Plaintiff's overtime claims brought on behalf of 123 social workers who admit that they either have not worked overtime or were fully paid for any overtime they worked; (3) Plaintiff's overtime claims brought on behalf of other social workers where Plaintiff fails to present specific evidence of unpaid overtime; and (4) Plaintiff's claim for injunctive relief. Dkt. 65 at 16–25; Dkt. 89 at 8–15.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Learned Professional Exemption**

Defendant argues that its social workers are entitled to the FLSA's professional exemption under 29 U.S.C. § 213(a)(1) because they meet the qualifications for a learned profession under 29 C.F.R. § 541.301(a). In disputes over whether any exception applies, it is the employer's burden to prove that employees are exempt. *Webster v. Public Sch. Employees of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) (citing *Donovan v. Nekton,*

*Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam)). "FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Webster*, 247 F.3d at 914 (citing *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)).

In this case, Plaintiff initially argues that the Court should afford Plaintiff deference to its interpretation of its own regulations, "even those interpretations that are expressed in litigation . . . ." Dkt. 85 at 12. Defendant counters that Plaintiff's "desperate request [for deference] is fundamentally flawed" and that the Department of Labor "does not have free reign to decide how the law applies to each set of facts." Dkt. 89 at 7–8. The Court agrees with Defendant to the extent that Plaintiff's "litigating positions . . . are wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 212 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.").

Therefore, the Court finds that Plaintiff's alleged "considered view" and proposed application of the law to the facts of this case are not entitled to "controlling deference" as Plaintiff argues. *See* Dkt. 85 at 17, lines 13-22.

The parties agree that the issue before the Court is whether Defendant's Social Workers II and III qualify for the learned professional exemption. As previously mentioned, Plaintiff's 30(b)(6) witness conceded that Defendant's social workers met the first two elements of the learned professional test.[2] Therefore, the remaining issue is whether Defendant's social workers possess "advanced knowledge [that] must be

---

[2] Even if Plaintiff objects to the Court finding that it conceded these points, Plaintiff fails to contest these elements in its brief. *See* Dkt. 85 at 10-18. Regardless, the Court finds that Defendant has clearly shown that its social workers perform work requiring advanced knowledge and that the advanced knowledge must be in a field of science or learning. *See* Dkt. 89 at 3-4; *see also supra*, Sec. II, A.

ORDER - 14

customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a)(3) ("educational requirement").

The educational requirement is met by the "possession of the appropriate academic degree" or "through a combination of work experience and intellectual instruction." 29 C.F.R. 541.301(d). The job does not meet this requirement if it "may be performed with only general knowledge acquired by an academic degree in any field" or where "most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." *Id*.

Although the Ninth Circuit has not addressed the FLSA's educational requirement, other courts of appeals have. The Honorable J. William Ditter, Jr., United States District Judge for the Eastern District of Pennsylvania recently summarized these opinions as follows:

> The Eleventh Circuit found that where a probation officer was required to simply have a college degree in any field, which need not be related to law enforcement, the failure to "require a college or advanced degree in any specialized field of knowledge" defeated the professional exemption. *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1565 (11th Cir. 1991). However, athletic trainers who were required to have a bachelor's degree in any field, along with 1800 hours of apprenticeship over three years and 15 hours of college courses in specified subjects such as human anatomy, human physiology, and athletic training, met the specialized training required for exemption. [*Owsley v. San Antonio Ind. Sch. Dist.*, 187 F.3d 521, 525 (5th Cir. 1999)]. The Fifth Circuit specifically held "that brevity of the trainers' course of specialized study does not preclude its inclusion under the 'learned' prong." *Id*.
> Requiring game wardens to have a bachelor's degree in "wildlife management, wildlife biology, or a closely related field," along with additional basic law enforcement training, meets the course of instruction requirement for a professional exemption. *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993). *But see Fife v. Harmon*, 171 F.3d 1173, 1176 (8th Cir. 1999) (agreeing with the district court, in dicta, that Airfield Operations Specialists did not meet the advanced knowledge requirement where the minimum qualifications were a bachelor's degree in aviation or a directly related field, four years of experience in aviation administration, or some combination of the two).
> Even where no degree was required, a funeral director and embalmer position nonetheless qualified as specialized intellectual instruction because the employee had to complete a year of mortuary science school, two years of college including specific classes in chemistry and psychology, and practice as an apprentice for one year. *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 742 (6th Cir. 2000). Similarly, a construction superintendent position which did not require "a specific and mandatory educational

ORDER - 15

> prerequisite" nonetheless was covered by the professional exemption. *Stevins v. Provident Construction Co.*, 137 Fed. Appx. 198, 199 (11th Cir. 2005). The Eleventh Circuit held that the "regulations do not require that an exempt professional hold a bachelor's degree; rather, the regulations require that the duties of a professional entail advanced, specialized knowledge." However, emergency medical technicians and paramedics who were not required to have a college degree did not meet the educational requirement of the professional exemption where they had to complete only 200 and 880 hours respectively of didactic training, clinical experience, and field internships. *Vela v. The City Of Houston*, 276 F.3d 659, 675 (5th Cir. 2001).

*Chatfield v. Children's Services, Inc.*, 555 F. Supp. 2d 532, 536-537 (E.D. Pa. 2008).

In *Chatfield*, the plaintiff was an employee of "Children's Services, a social service agency which provides child welfare programs, behavioral health programs, and after-school programs to children and families . . . ." *Id.* at 534. The plaintiff was a "Truancy Prevention Case Manager ("TPCM") and [was] responsible for assessing whether truancy is occurring, assessing the needs of the child and his or her family, recommending treatment, and ensuring that families receive appropriate resources." *Id.* at 535. Judge Ditter reasoned and concluded as follows:

> [A]lthough a general degree in a non-related field will not satisfy the specialized instruction test, even where there is no degree, a substantial amount of experience in the relevant field may qualify one for exemption. By requiring a bachelor's degree in social work, human services, or a related field along with three years of work experience providing community-based social support, Children's Services has established the necessary demands to satisfy the educational prong for professional exemption.
> The DOL opinion letter relied on by Chatfield which refused to characterize a caseworker's bachelor's degree in the "social sciences" as specialized instruction does not conflict with my decision. The "social sciences" are broadly defined as including sociology, psychology, anthropology, economics, political science, and history. *American Heritage Dictionary* (4th ed. 2000). In contrast, Children's Services requires applicants to hold a specialized degree in a field related to the work they will perform. Alternatively, an applicant is required to have seven years of experience in a related field. This alternative requirement of seven years of work experience providing community-based social support is significantly greater than any of the experience requirements found to be insufficient to qualify for exempt status. These requirements satisfy the third test for an exempt position.

*Chatfield*, 555 F. Supp. 2d at 537.

In this case, Defendant has plainly shown that its Social Workers II and III fall within the learned professional exemption. First, Defendant has shown that acceptable

ORDER - 16

degrees for social worker applicants are in social services such as counseling, psychology, social work, or human services. *See* Strange Decl., Exh. 2 (hiring cheat sheet). If applicants don't possess acceptable degrees, then they must have at least 30 semester hours or 45 quarter credits in acceptable social services classes. *Id*. These requirements are plainly more exacting than a bachelor's degree in "any field" as stated in 29 U.S.C. § 541.301(d), and they are more exacting than the caseworker's requirements outlined in the Department of Labor's 2005 opinion letter. Plaintiff, however, argues that Defendant's requirement that an applicant have a degree in "behavior sciences or an allied field" is more broad than the requirement in *Chatfield* that an applicant have a degree in "social work, human services, or a related field." Dkt. 85 at 16. The Court finds that "allied field," as opposed to "related field," is a distinction without a difference, especially when Defendant sets forth further requirements if the applicant's bachelor's degree falls within an allied field.

Second, Defendant requires its social workers to have specialized instruction. For example, Defendant requires that a Social Worker II have at least eighteen months of experienced social work and it requires even more specific experience for a Social Worker III. *See Owsley*, 187 F.3d at 525 (bachelor's degree and 1800 hours of apprenticeship met the specialized training required for the learned professional exemption). Moreover, Defendant requires its social workers to complete a formal training course by their division within one year of their appointment. Strange Decl., Exh. 1. Plaintiff argues that Defendant's formal training is "routine on-the-job new employee training" that does not satisfy the requirement for a "prolonged course of specialized training" and that the Court should afford Plaintiff deference to this interpretation. Dkt. 85 at 17-18. Because Plaintiff concedes that it has never issued an opinion letter on this issue, this litigation position should not be afforded deference. Therefore, the Court finds that Defendant's experience and training requirements weigh in favor of a requirement of specialized instruction.

Despite Defendant's minimum qualifications, Plaintiff argues that Defendant's "practice is to prefer candidates who have learned the duties of the Social Worker position through experience . . . ." Dkt. 85 at 14. In support of this argument, Plaintiff highlights social worker Nora Benavidez who "reported a successful 17-year career as a Social Worker, including promotions, with no degree of any kind." Dkt. 85 at 14. While this fact may evidence Ms. Benavidez's exceptional abilities, as opposed to detracting from the advanced knowledge of other social workers who do posses degrees, the regulations explicitly state that the professional's advanced knowledge must be "customarily acquired by a prolonged course of specialized instruction." 29 C.F.R. § 541.301. One employee out of 1,965 employees does little to show how Defendant's employees customarily acquire their advanced knowledge. Plaintiff's argument is without merit.

Therefore, the Court grants Defendant's motion for summary judgment on the issue of whether its employees meet the learned professional exemption because Defendant has shown that its social workers possess advanced knowledge that is customarily acquired by a prolonged course of specialized intellectual instruction.

**C.  Record Keeping**

The record-keeping provisions of the FLSA are very straightforward:

> Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each employee . . . .
>
> \* \* \*
>
> (7) Hours worked each workday and total hours worked each workweek.

29 C.F.R. § 516.2(a). The FLSA, however, does not require employers to comply with this record-keeping provision for employees who are exempt under 29 U.S.C. § 213(a).

In this case, the Court has found that Defendant's Social Workers II and III are exempt under 29 U.S.C. § 213(a). Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's record keeping claim.

ORDER - 18

## D. Uncompensated Work and Injunctive Relief

In this case, Plaintiff has submitted evidence that some of Defendant's social workers have worked more than 40 hours in a given week for which Defendant has not compensated them. *See, e.g.,* Nordby Decl., Exh. A.1, ¶¶ 21-27. It is unclear from the parties' briefs whether Plaintiff can enforce the FLSA for uncompensated work. It is also unclear from the parties' briefs whether injunctive relief is an appropriate form of relief for uncompensated work. Therefore, the Court reserves ruling on these portions of Defendant's summary judgment motion and requests additional briefing on these issues. The parties may file briefs on these issues no later than May 14, 2010 and the brief shall be no longer than ten pages.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 65) is **GRANTED in part** as stated herein and the parties may filed additional briefing on the remaining issues as stated herein.

DATED this 26th day of April, 2010.

BENJAMIN H. SETTLE
United States District Judge