The Honorable Benjamin H. Settle

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

HILDA SOLIS, Secretary of Labor,
United States Department of Labor,

11

Plaintiff,

12

v.

13

14

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

15

16

Defendant.

17

Case No. 3:08-cv-05479-BHS

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

NOTED FOR MOTION CALENDAR:
NOVEMBER 13, 2015

18

19

20

21

22

23

24

25

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

III. ARGUMENT ........................................................................................................ 4

A.   Many (If Not All) SWs Are Exempt Professionals .................................. 4

   1.   The *Solis* decision merely held that summary judgment was unwarranted on the record before the court because DSHS did not meet its burden .............. 5

   2.   SWs with degrees in social work presumptively satisfy the specialized intellectual instruction requirement and are exempt .......................................... 8

   3.   Beyond initial screening, many (if not all) SWs were subject to heightened hiring standards and are exempt ........................................................................ 9

   4.   SWs who admit they meet the exemption requirements are exempt ............... 11

B.   DSHS's Timekeeping Systems Are Legally Compliant ........................................... 11

C.   DSHS Fully Paid Many (If Not All) SWs For Any Overtime Hours They Worked ...................................................................................................................... 13

   1.   Summary judgment should be granted in relation to 144 SWs where uncontested evidence establishes that they have no overtime claim ................ 14

   2.   Summary judgment should be granted with respect to DSHS offices where uncontested evidence establishes that their SWs have no claim ..................... 15

   3.   Summary judgment should be granted with respect to all SWs who did not have a "case-carrying" assignment ................................................................ 16

   4.   The Court should summarily reject DOL's proposed representative testimony or set an early hearing to determine its validity .............................. 17

D.   DOL's Lawsuit Is Barred By Sovereign Immunity ................................................. 21

   1.   *National League of Cities* recognized that State sovereignty under the Tenth Amendment limits the application of the FLSA to State governments . 21

   2.   The political safeguard principles outlined in *Garcia* are no longer binding... 22

   3.   DOL's lawsuit violates state and dual sovereignty principles under *National League of Cities* and the Constitution ................................................ 23

E.   Injunctive Relief Is Not Warranted In This Case ................................................... 25

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - i
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

F.   The Court Should Limit This Case To SWs Currently Listed On Exhibit A .......... 27

  1.   The Ninth Circuit has defined the scope of this litigation based on factual representations from the DOL................................................................................ 28

  2.   The Court has the right to manage case schedules, and any amendment to Exhibit A would be after the deadline for amending parties and pleadings..... 29

  3.   A motion to amend cannot be justified at this late date ................................... 31

G.   The Court Should Bar Any Claims Of SWs For Any Periods More Than Two Years Prior To Their Listing On Exhibit A ............................................................ 33

IV.   CONCLUSION ............................................................................................................ 34

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - ii
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF AUTHORITIES

Page

## Cases

*Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122 (1st Cir. 2006) ................................31

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................................23, 24

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987)................................................27

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) .........................................17

*Auer v. Robbins*, 519 U.S. 452 (1960) ......................................................................8

*Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820 (4th Cir. 1999) ..............23

*Callahan v. Woods*, 736 F.2d 1269 (9th Cir. 1984)....................................................5

*Calpetco 1981 v. Marshall Exploration*, 989 F.2d 1408 (5th Cir. 1993) ...................................4

*Celotex Corp.* v. *Catrett*, 477 U.S. 317 (1986) ..............................................................4

*Chao v. Pacific Stucco, Inc.*, 2006 WL 2432862 (D.Nev. Aug. 21, 2006)................................28

*Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037 (D.Or. 2010) .......................13, 14, 19, 20

*Clark v. Centene Co. of Texas, L.P.*, 2015 WL 2250387 (W.D.Tex. 2015) ...........................16

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ...........................................1, 18

*Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986). .................................................13

*Donovan v. Crisostomo*, 689 F. 2d 869 (9th Cir. 1982)........................................32, 33

*Espenscheid v. Directsat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ...........................20

*Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372 (11th Cir. 1999)........................15

*Fast v. Applebee's Intern., Inc.*, 638 F.3d 872 (8th Cir. 2011)........................................9

*Fed. Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743 (2002) .................24

*Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) .................................13

*Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985) ....................22, 23

*Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554 (5th Cir. 2015)...................................1

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)................................................................22

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - iii
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) .....................................21

*Hall v. City of Los Angeles*, 697 F.3d 1059 (9th Cir. 2012) .......................................6

*Haynes Trane Servs. Agency v. American Standard, Inc.*, 573 F.3d 947 (10th Cir. 2009) .........4

*Herrington v. County of Sonoma*, 12 F.3d 901 (9th Cir. 1993) .....................................5

*Hertz v. Woodbury County Iowa*, 566 F.3d 775 (8th Cir. 2009).....................................13

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981)....................23

*Horne v. Flores*, 129 S.Ct. 2579 (2009) .......................................................23

*Hukic v. Aurora Loan Servs.*, 588 F.3d 420 (7th Cir. 2009).......................................33

*Illinois Tool Works Inc. v. Ind. Ink, Inc.*, 547 U.S. 28 (2006) .....................................27

*Imada v. City of Hercules*, 138 F.3d 1294 (9th Cir. 1998) ........................................13

*In re Perez*, 749 F.3d 849 (9th Cir. 2014)........................................17, 18, 19, 20, 21, 28, 30, 33

*In re Wells Fargo*, 571 F.3d 953 (9th Cir. 2009).................................................18

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990)........................................30

*Jackson v. State of Alabama State Tenure Comm.*, 405 F.3d 1276 (11th Cir. 2005) ....................7

*Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013) .....................................18

*Joe Lujan Enters., Inc. v. Elec. Contracting Corp.*, 848 F.2d 118 (9th Cir. 1988)....................30

*Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y. 2010)........................................13

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) ............................................24

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ..........................................13

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) ...................31

*Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310 (9th Cir. 1984).......................31, 33

*Marshall v. Hope Garcia Lancarte*, 632 F.2d 1196 (5th Cir. 1980).................................21

*Martin v. Coventry Fire Dist.*, 981 F.2d 1358 (1st Cir. 1992).....................................26

*McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988)......................................15, 16

*Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 406 F.3d 567 (9th Cir. 2005) ........7

*Mitchell v. Hertzke*, 234 F.2d 183 (10th Cir. 1956)..............................................25

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - iv
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Mortimer v. Baca*, 594 F.3d 714 (9th Cir. 2010) ........................................................7

*Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488 (1942) .................................27

*Murray v. Stuckey's, Inc.*, 939 F.2d 614 (8th Cir. 1991) ......................................21

*National League of Cities v. Usery*, 426 U.S. 833 (1976) .....................21, 22, 23, 24

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .....................................................28

*New York v. United States*, 505 U.S. 144 (1992); ............................................22, 23

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) ...................................13

*Perez v. Oak Grove Cinemas, Inc.*, 68 F.Supp.3d 1234 (D.Or. 2014) .................16, 20

*Piscione v. Ernst & Young, LLP*, 171 F.3d 527 (7th Cir. 1999) ............................11

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) .....26

*Printz v. United States*, 521 U.S. 898 (1997) ...................................................22, 23

*Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994) .....................................19

*Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060 (1st Cir. 1995) ...............26

*Reich v. Southern Maryland Hosp., Inc.*, 43 F.3d 949 (4th Cir. 1995) ...............18, 20

*Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F.Supp.3d 1295 (N.D.Ga. 2014) .......18

*Rosano v. Township of Teaneck*, 754 F.3d 177 (3d Cir. 2014) ...............................13

*Sec'y of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991) .................................16, 19

*Seminole Tribe v. Florida*, 517 U.S. 44 (1996) .....................................................22

*Solis v. State of Wash., DSHS*, 656 F.3d 1079 (9th Cir. 2011) ...............1, 2, 5, 6, 7, 8, 9, 11

*South Carolina v. Baker*, 485 U.S. 505 (1988) .....................................................22

*Steir v. Girl Scouts of the USA*, 383 F.3d 7 (1st Cir. 2004) ...................................31

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) .....16

*U.S. v. Kellington*, 217 F.3d 1084 (9th Cir. 2000) ............................................5, 6, 28

*U.S. v. Park Place Ass., Ltd.*, 563 F.3d 907 (9th Cir. 2009) .....................................4

*United States v. Lopez*, 514 U.S. 549 (1995) ...................................................22, 23

*United States v. Morrison*, 529 U.S. 598 (2000) ...................................................23

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - v
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Von Friewalde v. Boeing Aerospace Operations*, 2009 WL 2391400 (5th Cir. Aug. 4, 2009) ...................................................................................................................21

*Walling v. T. Buettner & Co.*, 133 F.2d 306 (7th Cir. 1943) ...............................25, 26

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ......................................1, 18

*Western States Paving Co., Inc. v. WSDOT*, 407 F.3d 983 (9th Cir. 2005)................5

*Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456 (S.D.N.Y. 2011)......................19

## Statutes

28 U.S.C. § 1927 ...................................................................................................15

29 U.S.C. § 207 ....................................................................................................13

29 U.S.C. § 211 ...............................................................................................11, 13

29 U.S.C. § 213 ......................................................................................................4

29 U.S.C. § 216 ...........................................................1, 14, 15, 26, 32, 33

29 U.S.C. § 217 ..........................................................................................1, 15, 25

29 U.S.C. § 255 .....................................................................................................33

RCW 41.56 ...........................................................................................................25

RCW 41.80 ...........................................................................................................25

RCW 43.20A.010 ....................................................................................................2

RCW 47.64 ...........................................................................................................25

## Treatises

Chemerinsky, Erwin, The Assumptions of Federalism, 58 Stan. L. Rev. 1763 (April 2006) ....23

Wright & Miller, 10A *Federal Practice and Procedure* § 2716 (1998) ......................5

Yoo, John, The Judicial Safeguards of Federalism, 70 S. Cal. L. Rev. 1311 (1996) ................23

## Regulations

29 CFR § 516.1 ......................................................................................................11

29 CFR § 516.2 ................................................................................................12, 26

29 CFR § 516.3 ......................................................................................................11

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - vi
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

29 CFR § 541.2 ..............................................................................................11

29 CFR § 541.301 ......................................................................................5, 6, 8

29 CFR § 541.700 .........................................................................................6, 11

29 CFR § 785.19 ...............................................................................................13

29 CFR § 785.35 ...............................................................................................13

29 CFR § 785.48 .........................................................................................11, 13

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - vii
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

### I.      INTRODUCTION

2       The U.S. Department of Labor ("DOL") brought this action under 29 U.S.C. §216 and 29

3  U.S.C. §217 claiming that Defendant Department of Social and Health Services ("DSHS")

4  violated the Fair Labor Standards Act ("FLSA") by failing to comply with its recordkeeping

5  requirements and failing to pay overtime to Social Worker IIs and IIIs ("SWs"). As DSHS

6  previously outlined in its "2010 Motion" (Dkt. 65), DOL's claims fail. This Court granted

7  summary judgment based on evidence that DSHS screened all candidates for these positions to

8  assure that they met certain educational requirements. Dkt. 111. The Ninth Circuit reversed,

9  holding that "the district court should not have granted summary judgment" because DSHS "has

10  not met its burden of showing" that SWs fall within the professional exemption. *Solis v. State of*

11  *Wash., DSHS*, 656 F.3d 1079, 1088-89 (9th Cir. 2011) ("*Solis*"). Although *Solis* will require a

12  more detailed, fact-based analysis for each SW, it does not alter the most important fact: DOL's

13  claims have no merit for most (if not all) SWs.[1] DOL's refusal to acknowledge that there is no

14  evidence of uniform violations here should not be countenanced.[2]

15       As directed by the Court (Dkt. 188) and in the hope of narrowing this litigation, DSHS

16  hereby moves for summary judgment on the following issues: (1) many (if not all) SWs fell

17  within the learned professional exemption; (2) DSHS's recordkeeping methods fully complied

18  with the law; (3) DSHS fully paid many (if not all) SWs for any overtime hours they worked; (4)

19

20  ---

[1] DSHS recognizes that some SWs have alleged that, at some times and in some offices, they did not report and were not paid overtime. As discussed herein, other SWs attest this was not true for them. Regardless, DSHS has always been willing to address these issues individually and to pay any SW who, in fact, worked unpaid overtime. DOL has, unfortunately, refused to address individual issues and has demanded state-wide relief for all SWs. As a steward of public funds, DSHS cannot in good faith agree to pay the many SWs who did not work unpaid overtime. Such payments would be an improper gift of public funds, and DOL's attempts to force such payments raise serious due process concerns. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551, 2561 (2011) (must prove common injury); *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433-34 (2013) (damages must be tied to actual injury).

[2] In a pattern that has been repeated around the country, DOL's claims arose out of a flawed investigation, and are being pursued in an improper manner that does not befit a government agency. *E.g.*, *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 555 (5th Cir. 2015) ("It is often better to acknowledge an obvious mistake than defend it. When the government acknowledges mistakes, it preserves public trust and confidence. It can start to repair the damage done by erroneously, indeed vindictively, attempting to sanction an innocent business. Rather than acknowledge its mistakes [the court details DOL's inadequate investigation and improper litigation tactics], however, the government here chose to defend the indefensible in an indefensible manner.")

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 1
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

DOL's lawsuit is barred by sovereign immunity; and (5) injunctive relief is not warranted. In addition, to keep this litigation focused, DSHS requests that the Court bar further amendments to Exhibit A to the Complaint (which lists the SWs for whom DOL is seeking relief under §216).

## II.       STATEMENT OF FACTS

DSHS is a public agency created by the legislature to "integrate and coordinate...[the] provision of care for individuals who…require…institutional care, rehabilitation or other social and health services." RCW 43.20A.010. This case focuses on SWs for DSHS's Children's Administration ("CA"), which protects abused and neglected children. These SWs worked out of 44 offices in six regions and three primary program areas, and performed different duties depending on the office, region, program, and particular file. *E.g.*, Dkt. 111 at 2-7; Dkt. 67 ¶5-18; *Solis*, 656 F.3d at 1082 ("the work of individual social workers varies").

SWs were subject to a bargaining agreement ("CBA") that allowed them to be paid for overtime they worked; however, both the CBA and DSHS policy required SWs to obtain preapproval for overtime except in cases of emergency. Dkt. 111 at 6. If budgetary constraints limited the amount of overtime available, SWs were expected to prioritize their work or flex their time within the workweek. *Id.*; Dkt. 67 ¶20-30. In these circumstances, DSHS supervisors reminded SWs of the need to prioritize work in order to avoid overtime, and adjusted workloads and schedules if necessary. *E.g.*, Dkt. 70-3 at 42-43 ¶9, 28 ¶20. Following these expectations, a vast array of SWs have testified that (1) they either worked no overtime or were paid for any overtime hours they worked,[3] and (2) the same was true for other SWs with whom they worked.[4] Indeed, DOL's investigation and survey revealed many such SWs,[5] and some of DOL's own declarants (submitted with their 2010 Opposition) verified that SWs have no claim for unpaid

---

[3] *E.g.*, Dkt. 70 ¶2-10 (and exhibits in Dkt. 70-2 to 70-8); Dkt. 90 ¶4-7 (and exhibits at 19-41); Dkt. 86-3 at 46-48; Dkt. 105 ¶6 (and exhibits in Dkt. 105-2).
[4] *E.g.*, Dkt. 70-2 at 4 ¶11, 15 ¶6, 27-28 ¶18-19, 30-31 ¶7-8, 49-50 ¶5-9, 53-54 ¶11-12; Dkt. 70-3 at 4 ¶16, 16 ¶13, 20 ¶12, 27-28 ¶16-21, 31 ¶8, 39 ¶13; Dkt. 70-4 at 4-5 ¶16, 18-19, 9 ¶12, 20 ¶11, 24-25 ¶9-11, 32 ¶16, 52 ¶14; Dkt. 70-5 at 7 ¶9, 11 ¶10, 17 ¶8, 20-21 ¶13, 25 ¶14, 41 ¶12-13, 49 ¶12, 53 ¶9; Dkt. 505-2 at 10 ¶17, 42 ¶18, 47 ¶10.
[5] *E.g.*, Dkt. 70 ¶3-5 (and exhibits in Dkt. 70-6 to 70-8).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   overtime. For instance, DOL witness SW Cindy Dickson testified:

2       8.      Whenever possible I need to get prior approval before I work routine overtime
        hours. This is reasonable because DSHS has a right to establish a budget.

3

4       9.      I feel free to make a request for overtime and I have regularly done so. In a crisis
        situation when prior approval is not possible, I have always been paid for overtime. I
        have dealt with crisis work a lot and payment of overtime was never an issue. I have
5       never been denied payment for overtime after working the extra hours.

6       10.     Since February 2008, I have worked approximately 3 hours of overtime per week.
        I always report these hours, request overtime and I am paid or I use flex time in the same
7       week to stay within 40 hours. I work no unreported overtime hours.

8   Dkt. 86-3 at 47. Other 2010 DOL declarants stated they were paid for all overtime depending on

9   the time period, office, or supervisor.[6] Still other DOL declarants claimed that some SWs had

10  unapproved overtime (but admitted that others did not).[7] Regardless, DSHS paid for any

11  overtime that SWs reported, even if unapproved. Dkt. 67 ¶30.

12      This case started in 2006, with an investigation of DSHS in Walla Walla.[8] Dkt. 111 at 10-

13  12. The investigator failed to follow DOL's investigative guidelines and jumped to conclusions

14  (without supporting facts).[9] Despite the lack of any factual basis, DOL decided to pursue global

15  claims covering all CA offices. After filing this lawsuit, DOL's counsel created and sent out a

16  questionnaire to gather further information in an attempt to cover the deficiencies in the DOL

17
18  [6] *E.g.*, Dkt. 86-3 at 15 ("I am currently [in 2010] able to get my job done within 40 hours since there was a cap
    placed on the total number of cases assigned to each worker about 5 to 6 years ago"); *id.* at 24 ("From about
19  December, 2005, to January, 2008, I worked in positions that did not require overtime"); *id.* at 36 ("In my present
    position, I...am not required to work overtime"); Dkt. 86-4 at 38 ("I currently record all my actual hours worked and
20  am paid for all hours worked, including overtime or compensatory time...at time-and-a-half. My present supervisor
    understands about the requirements and needs for overtime, and approves whatever is needed.")
21  [7] *E.g.*, Dkt. 86-2 at 7 ("Some [SWs] work more slowly than others, especially perfectionists."); *id.* at 17 ("There are
    [SWs] who are kid-oriented, who put in the time necessary - and there are [SWs] who see it as a job."); *id.* at 37 ("I
    know that some co-workers of mine only work 40 hours a week, but...they are always more behind in their work").
22  [8] The complainant, Karen Patton, last worked for DSHS in 2005. Although the statute of limitations bars her claims,
    DOL filed Ms. Patton's declaration with its 2010 Opposition: she admitted she and other SWs "had been eligible
23  for, and had received overtime" until a new manager took over her office, and "the administration of flex time and
    overtime varied from one DSHS office to the next, and from one DSHS supervisor to the next." Dkt. 86-4 at 26, 28.
24  [9] For example, the investigator talked to SWs who sought her out, but made no effort to talk to SWs in every office,
    interview a statistically significant sample, or randomly select interviewees. Dkt. 69-3 at 13-15 (92:9-93:12, 99:10-
    25,106:23-107:5, 108:5-14); Dkt. 69-4 at 6 (57:22-23). Indeed, the investigator candidly admits she should have
25  talked to more SWs, and her supervisor admits that it was inappropriate to make generalizations to other SWs and
    offices based on the limited information that she collected. Dkt. 69-3 at 16 (140:6-17), 32 (124:12-21), 34 (153:16-
26  155:1). This Court also detailed some of the investigator errors on the exemption issue. Dkt. 111 at 10-12.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 3
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

investigation; however, that questionnaire contained as many flaws as the investigation.[10]

This Court granted summary judgment to DSHS on April 26, 2010. Dkt. 111. DOL did not challenge the Court's factual findings on appeal and the Ninth Circuit did not question those findings, thus they should be treated as the law of the case.[11] DSHS relies on those findings (Dkt. 111 at 2-12) and other facts detailed in the argument sections herein to support this motion.

## III.    ARGUMENT

"One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp*. v. *Catrett*, 477 U.S. 317, 323-24 (1986). Such motions are the "principal tool[] by which factually insufficient claims [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. By eliminating claims that lack merit, summary judgment can help to focus the issues in a case.[12] Behind DOL's posturing in this case lies a simple fact: DOL has no evidence to substantiate its global claims. Thus, in the hopes of narrowing the issues here, DSHS once again details evidence establishing that DOL's claims fail for individual SWs and groups of SWs. Summary judgment is thus warranted for the many reasons detailed herein.

### A.    Many (If Not All) SWs Are Exempt Professionals

Employees are exempt from the FLSA's overtime requirements if they are "employed in a bona fide…professional capacity." 29 U.S.C. § 213 (a)(1). To qualify for the professional exemption, an employee must meet a primary duty test and be paid at least $455 per week on a salary basis. A learned professional's "primary duty must be the performance of work requiring

---

[10] For example, the accompanying cover letter was biased, the questions were poorly worded and did not measure the right things, and the respondents were not asked to sign or certify that their answers were accurate (let alone certify the answers under oath). Dkt. 69-4 at 12-13 (129:7-130:4), 15 (154:17-157:3), Dkt. 69-3 at 40 (171:21-172:14); Dkt. 115-3 at 35-40 (106:21-107:24, 113:20-114:11, 118:15-119:7).

[11] *E.g.*, *U.S. v. Park Place Ass., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) (law of the case posits that a court's decisions should continue to govern the same issues in subsequent stages of same case); *Haynes Trane Servs. Agency v. American Standard, Inc.*, 573 F.3d 947, 963 (10th Cir. 2009) (decision made at one stage of litigation, unchallenged in subsequent appeal, becomes law of the case in that same litigation).

[12] *E.g.*, *Calpetco 1981 v. Marshall Exploration*, 989 F.2d 1408, 1415 (5th Cir. 1993) (where partial summary judgment is granted, "the length and complexity of trial on the remaining issues are lessened, all to the advantage of the litigants, the courts…and the American public in general").

---

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 4
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  advanced knowledge in a field of science or learning customarily acquired by a prolonged course

2  of specialized intellectual instruction." 29 CFR § 541.301(a). This involves three elements:

3  (1) the employee must perform work requiring advanced knowledge; (2) the advanced

4  knowledge must be in a field of science or learning; and (3) the advanced knowledge must be

5  customarily acquired by a prolonged course of specialized intellectual instruction.

6       In this case, DOL has conceded that SWs are paid on a salary basis and satisfy the first

7  two duty elements. Dkt. 111 at 14 & n.2; Dkt. 69-4 at 17-19. The only question is whether some

8  (or all) SWs satisfy the specialized instruction element. They do.

9       **1.**     **The *Solis* decision merely held that summary judgment was unwarranted on the record before the court because DSHS did not meet its burden**

10
11       "According to the rule of mandate, although lower courts are obliged to execute the terms

12  of a mandate, they are free as to 'anything not foreclosed by the mandate.'" *U.S. v. Kellington*,

13  217 F.3d 1084, 1092-93 (9th Cir. 2000) (*quoting Herrington v. County of Sonoma*, 12 F.3d 901,

14  904 (9th Cir. 1993)). The district court determines the intention of the mandate from the

15  language of the mandate itself and the court's opinion. *Id.* at 1093. Here, the Ninth Circuit held:

16       Because the social worker positions at issue here require only a degree in one of several diverse academic disciplines or sufficient coursework in any of those disciplines, we conclude that DSHS **has not met its burden** of showing that its social worker positions "plainly and unmistakably" meet the regulatory requirement. Accordingly, we reverse and remand for further proceedings consistent with this opinion. (emphasis added)

17
18  *Solis*, 656 F.3d at 1088-89. The court used "has not." It did not hold that DSHS "cannot" meet its

19  burden as a matter of law, and it did not grant summary judgment to DOL.[13] If the court had

20  intended such relief it would have stated it expressly. *E.g.*, *Western States Paving Co., Inc. v.*

21  *WSDOT*, 407 F.3d 983, 1003 (9th Cir. 2005) ("We therefore reverse the district court's grant of

22  summary judgment as to the WSDOT…and remand this matter to the district court with

23  instructions to enter summary judgment in favor of Western States on its as-applied challenge.").

24  _____

25  [13] Appellate courts rarely grant summary judgment to an appellant because it could "unfairly deprive the other party of the opportunity to present pertinent evidence." *Callahan v. Woods*, 736 F.2d 1269, 1275 (9th Cir. 1984); Wright & Miller, 10A *Federal Practice and Procedure* § 2716 at 293 (1998) ("Needless to say, the reviewing court must

26  exercise caution in directing the entry of summary judgment in order to avoid denying one side the right to a trial.").

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 5
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Under the "rule of mandate," an issue is not foreclosed unless "[t]he issue in question

2    [was] decided explicitly or by necessary implication in the previous disposition;" the district

3    court is allowed "to decide anything not foreclosed by the mandate." *Hall v. City of Los Angeles*,

4    697 F.3d 1059, 1067 (9th Cir. 2012); *Kellington*, 217 F.3d at 1093 (mandates require respect for

5    what is decided, not for what is not decided). Thus, the question here is what issue was presented

6    in *Solis* and whether resolution of that issue foreclosed the professional exemption. It did not.

7    Both *Solis* and DOL recognize that social workers may be exempt professionals.[14] In

8    addition, DOL has historically taken the position that eligibility for the professional exemption

9    must be determined on an individual basis.[15] DOL has recognized, however, that general

10   evidence as to degrees held (*e.g.*, a Masters Degree in Social Work ("MSW")) or standardized

11   screening or hiring criteria may sometimes obviate the need for individual evidence for particular

12   professions.[16] In its 2010 Motion, DSHS sought to avoid the need for individual proof by

13   pursuing summary judgment based on the initial screening requirements for SWs and, in the

14   alternative, sought summary judgment in relation to SWs who held MSWs. Dkt. 65 at 12. DSHS

15   presented a declaration with the educational criteria it used to screen potential candidates for SW

16   positions.[17] This Court granted summary judgment based on the screening requirements (and did

17   not address the possession of MSWs as an independent basis for exempt status). Dkt. 111 at 16-

18   17. Likewise, the Ninth Circuit focused on the screening requirements used by recruiters to weed

19

20

21   [14] *Solis*, 656 F.3d at 1086; Dkt. 69-2 at 2-3 (2005 Opinion Letter); Dkt. 69-2 at 5-6 (2001 Opinion Letter).

22   [15] 29 CFR § 541.700(a) ("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."); Dkt. 69-2 at 2-3 (2005 Opinion Letter stating: "The provisions of this exemption must be considered on an employee-by-employee basis.").

23   [16] *E.g.*, 29 CFR § 541.301(e), (f) (discussing various professions); Dkt. 69-2 at 2-3 (2005 Opinion Letter on social workers); Dkt. 69-2 at 5-6 (2001 Opinion Letter on social workers); Decl. of Patrick M. Madden Dated October 8, 2015 ("Madden Dec.") Ex. B (DOL Field Operations Handbook ("FOH") § 22i47 (11/29/2010) on social workers).

24   [17] Dkt. 68 ¶ 5 (Declaration of Debbie Cheney-Strange). This process merely "screen[ed] the social worker job candidates for the minimum qualifications…to decide which applicants [to] forward on to the individuals within Children's Administration who make the final hiring decisions." *Id.* ¶ 3. "This screening [was] the initial step in a rigorous application process." *Id.* Evidence DOL submitted in 2010 demonstrated that Regional Administrators had hiring authority, and interviews were conducted by office supervisors. *E.g.*, Dkt. 86-5 at 12, 18, 26, 37.

25

26

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 6
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  out unqualified applicants, accepting DOL's argument that a Qualifications Cheat Sheet[18] did not

2  require degrees that were sufficiently linked with actual duties of the SWs.[19]

3         The Ninth Circuit did not look beyond the initial screening document, did not hold that

4  the professional exemption could not apply if more stringent expectations were applied by those

5  charged with actual hiring (not initial screening) at various offices or times, and did not hold that

6  SWs who hold MSWs and similar specialized degrees could not be exempt professionals

7  (especially if they admit that their primary duty is to perform work requiring advanced

8  knowledge in a field of science or learning customarily acquired by a prolonged course of

9  specialized intellectual instruction). Its decision thus does not foreclose a different outcome (on

10  summary judgment or at trial) based on different facts or aspects of the professional exemption.[20]

11  As DOL recognizes, "A slight difference in the facts may result in a different outcome." Madden

12  Dec. Ex. A (DOL FOH § 22i00 (11/29/2010)). Instead, as detailed herein, most (if not all) SWs

13  fell within the professional exemption because they had MSWs or similar degrees targeted to

14  social work, those charged with hiring often used heightened requirements, and many SWs admit

15  that their primary duty satisfied the professional exemption criteria (including specialized

16  intellectual instruction). This motion seeks summary judgment in relation to many of these SWs.

17  For those SWs not addressed by this motion, DSHS will demonstrate on a full evidentiary record

18  at trial that they were exempt because their primary duty was to perform work requiring

---

[18] DOL's arguments on the Cheat Sheet (and the Ninth Circuit's decision) were not based on facts about what actually happened in the screening (let alone hiring) process; instead, DOL argued about how the Cheat Sheet could be construed in the light most favorable to the DOL. This is different than the burden DOL will face at trial. *E.g.*, *Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 406 F.3d 567, 576 (9th Cir. 2005) ("At trial the district court evaluate[s] the evidence to determine which party's position was 'more likely true,' instead of looking at it in the light most favorable to [plaintiff] as the nonmovant at the summary judgment stage.").

[19] *Solis*, 656 F.3d at 1087. The court focused on the screening criteria, stating that "[t]he requirement of a degree or sufficient coursework in any of several fields broadly related to a position suggests that only general academic training is necessary," and held that "DSHS has not met its burden" on summary judgment. *Id.* at 1088. The Ninth Circuit certainly did not hold that SWs could not be exempt if DSHS shows that its hiring agents required heightened standards beyond "general academic training" or if SWs hold advanced degrees in social work.

[20] *E.g.*, *Jackson v. State of Alabama State Tenure Comm.*, 405 F.3d 1276, 1283-84 (11th Cir. 2005) (reversal of summary judgment on one factual record, viewed in light most favorable to nonmovant, did not bar later summary judgment on different record); *Mortimer v. Baca*, 594 F.3d 714, 720-721 (9th Cir. 2010).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 7
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

2.     **SWs with degrees in social work presumptively satisfy the specialized intellectual instruction requirement and are exempt**

In discussing the intellectual instruction requirement, 29 CFR § 541.301(d) states unequivocally: "The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree."[21] DOL has specifically applied this guidance to social workers who hold MSWs or bachelor's degrees in social work.

DOL's 2005 Opinion Letter[22] states that "those Social Workers with master's degrees who work in the field of their degree, will generally meet the above criteria" because "[s]ocial work conducted at this level requires advanced knowledge in a 'field of science or learning' and has the recognized professional status required by the regulation." Dkt. 69-2 at 2-3. Similarly, DOL's 2001 Opinion Letter states that a Social Caseworker with a "master's degree in social work or human behavioral science" "meet[s] the professional exemption as outlined in the Regulations." *Id.* at 5-6. The Ninth Circuit adopted the position in these opinion letters. *Solis*, 656 F.3d at 1086 ("The DOL concluded that the criteria for the social worker position [including a masters degree in social work] 'require[d] advanced knowledge in a 'field of science or learning,' and that such workers would qualify for the exemption as long as they 'work[ed] in the field of their degree.'"). With its 2010 Motion, DSHS presented extensive evidence of SWs who hold MSWs (and who testified that their degrees were essential to the work they performed as social workers).[23] Because SWs with MSWs are working in the field of their degree, this Court should hold that all such SWs are exempt (or presumptively exempt) as learned professionals.

---

[21] *See also* DOL Fact Sheet #17D: Exemption for Professional Employees Under the Fair Labor Standards Act (FLSA) (Madden Dec. Ex. C) ("The best evidence of meeting this requirement is having the appropriate academic degree."); Dkt. 69-2 at 2-3 (2005 Opinion Letter quoting § 541.301(d)).

[22] The Ninth Circuit deferred to these Opinion Letters because the "DOL's interpretation of its own regulations generally is accorded controlling deference 'unless plainly erroneous or inconsistent with the regulation.'" *Solis*, 656 F.3d at 1085 (*quoting Auer v. Robbins*, 519 U.S. 452, 461 (1960)).

[23] *E.g.*, Dkt. 70-2 at 22-23 ¶¶9-10, 30 ¶3, 39 ¶4, 42 ¶3, 52 ¶3; Dkt. 70-3 at 2 ¶5, 19 ¶3, 22 ¶3, 41 ¶4, 44-45 ¶2; Dkt. 70-4 at 2 ¶3, 19 ¶4, 23 ¶4, 27 ¶3, 30 ¶3, 34 ¶3, 38 ¶3; Dkt. 70-5 at 19 ¶3, 23 ¶4, 27 ¶4, 34 ¶3, 40 ¶3, 44 ¶3.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 8
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Moreover, DOL FOH § 22i47 (11/29/2010) states that "Social Workers who have

2    acquired at least a bachelor's degree in social work … and who work in the field of their degree

3    will meet the learned professional test provided that the degree is a customary requirement for

4    entry into the particular field of social work in which the work is being performed."[24] Madden

5    Dec. Ex. B. Again, with its 2010 Motion, DSHS provided evidence of SWs who held bachelor's

6    degrees in social work (and who testified that their degrees were customary and essential to the

7    work they performed as SWs).[25] The Court should thus hold that they are exempt as learned

8    professionals and dismiss their claims, together with the claims of SWs with MSWs.

9        3.    **Beyond initial screening, many (if not all) SWs were subject to heightened
              hiring standards and are exempt**

10   As discussed above, the Ninth Circuit focused on the initial screening criteria used by

11   DSHS recruiters (as outlined in the Qualifications Cheat Sheet), finding that they were too broad.

12   *Solis*, 656 F.3d at 1086-87. The court was especially troubled by degrees in anthropology and

13   gerontology.[26] *Id.* at 1088. The Ninth Circuit recognized, however, that more targeted standards

14   would satisfy the specialized intellectual instruction requirement for social workers. *Id.* at 1087

15   (referencing the 2001 opinion letter which stated that degrees with course work focused on

16   "social work, psychology, sociology, guidance and counseling, and child development" are

17   acceptable). DOL guidance agrees.[27]

18   With its 2010 Motion, DSHS presented uncontroverted evidence that the hiring criteria

19   that were used in various DSHS regions and offices exceeded the standards recognized in *Solis*

---

[24] DOL adopted this new subsection after DSHS filed its response brief in the Ninth Circuit and did not disclose it in DOL's Appellate Reply Brief. Thus, this section was not discussed in the *Solis* opinion or included in its analysis. Regardless, the FOH is entitled to the same level of deference given to the opinion letters in *Solis*. *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878 (8th Cir. 2011). This new section amounts to a substantial change in the law considering that DOL argued positions contrary to this section in this Court and in the Ninth Circuit.

[25] *E.g.*, Dkt. 70-2 at 2 ¶5; Dkt. 70-3 at 15 ¶3, 22 ¶3; Dkt. 70-4 at 63 ¶4; Dkt. 70-5 at 56 ¶3, 59 ¶4.

[26] These degrees were included in the cheat sheet because the hiring criteria were not only directed to SWs for the Children's Administration, but also to SWs who worked with the elderly and Native Americans.

[27] *E.g.*, Madden Dec. Ex B (DOL FOH (11/29/10) § 22i47 listing "bachelor's degree in social work, drug and alcohol education, counseling, psychology, or criminal justice"); Dkt. 69-2 at 5-6 (2001 Opinion Letter).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 9
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

as warranting summary judgment.[28] For example, Ken Nichols, the Region 2 administrator, testified (when deposed by DOL) that the requirement in his region was a "Bachelor's degree" "in psychology, social work or sociology" and that he did not recall ever hiring "anyone who didn't have a Bachelor's degree in either psych, social work, or sociology." Madden Dec. Ex. D (23:6-16). Other regions also had heightened requirements.[29] Similarly, many offices established higher expectations when hiring SWs. For example, Vancouver SW Jennifer Holbrook testified:

> Other employees doing my job also have specialized academic training. The Vancouver office has met the standards for accreditation by the Council on Accreditation, so it has pretty high academic standards for its social workers and most have a Masters degree. In fact, when I only had a Bachelor's degree, I could not get a job in this office.

Dkt. 70-4 at 2 ¶4. Similarly, Walla Walla SW Brooke Sandoval testified:

> Social Workers in Walla Walla must have a MSW or a Masters in a related field to qualify for the job.

Dkt. 70-5 at 34 ¶3. And, Port Angeles SW Michael Bucierkia testified:

> When I was hired by DSHS, you had to have an MSW to become a Social Worker.

Dkt. 70-2 at 30 ¶3. Indeed, even a DOL declarant from Bremerton admitted: "At some point after I was hired [in 1997,] having a Master's degree became the norm." Dkt. 86-3 at 14. Because these regions and offices established heightened hiring requirements that satisfy any construction of the DOL interpretations and the *Solis* opinion, the Court should grant summary judgment in relation to these locations.[30]

---

[28] Recruiters (like Ms. Cheney-Strange) decided whose applications would or would not be forwarded for consideration; however, they had no role in hiring. Instead, local office supervisors would interview candidates and regional administrators had hiring (or appointing) authority for their regions. *E.g.*, Dkt. 86-5 at 12, 18, 26, 37.

[29] Madden Dec. Ex. E (24:17-19, 25:9-10) (Martin Butkovich of Region 1 testifying that "[t]ypically their degree is in social worker related fields" - "primarily in sociology and psychology"); *id.* Ex. F (77:17-22) (Nancy Sutton of Region 5 testifying "they're coming to us with bachelor's degrees in social work, psychology, sociology, criminal justice, counseling, that kind of thing. So they should come to us with developmental training on human development, on child development"); *id.* Ex. G (161:15-17; 165:8-9, 13-18) (Myra Casey of Region 6 testifying that the degree required for hiring "has to be a social worker degree or something closely related" and she does not recall hiring anyone without such a degree).

[30] Although DSHS has limited this motion to the evidence (and locations) expressly identified in the 2010 Motion because DOL's counsel stated that they would otherwise assert a need for additional discovery, DSHS intends to demonstrate at trial (or in a later motion if allowed) heightened standards in other regions and offices.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 10
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**4.    SWs who admit they meet the exemption requirements are exempt**

Ultimately, as DOL interpretations repeatedly state, the assessment of an exemption must be individualized and based on "the character of the employee's job." 29 CFR § 541.700(a); Dkt. 69-2 at 2-3 (2005 Opinion Letter). Any attempt by DOL to focus on job titles alone would contradict 29 CFR § 541.2, which declares that the "exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." Indeed, as *Solis* holds, the exemption turns on whether degrees and course-work relate to "the actual duties" of SWs. 656 F.3d at 1087.

With the 2010 Motion, DSHS presented extensive evidence from SWs about their own circumstances, the requirements of their jobs, and the specialized intellectual instruction that was necessary for their jobs. Those SWs provided uncontroverted evidence that their degrees (and those customarily obtained by other SWs) are necessary for and integral to their jobs.[31] Based on this testimony regarding the actual duties of SWs and how their degrees relate to that work, summary judgment in relation to these particular employees is warranted. *E.g.*, *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 545 (7th Cir. 1999) (affirming summary judgment for employer because the nature of plaintiff's job responsibilities required specialized intellectual instruction).

**B.    DSHS's Timekeeping Systems Are Legally Compliant**

29 U.S.C. § 211 requires employers subject to the FLSA to "make, keep, and preserve" records of wages and work hours as "prescribed by regulation." These regulations are set forth in 29 CFR Part 516.[32] 29 CFR § 516.1 provides that "[n]o particular order or form of records" is required. Employers need not use time clocks or any precise method of tracking time, 29 CFR § 785.48(a), and may rely on work schedules for employees who are assigned fixed schedules:

---

[31] *E.g.*, Dkt. 70-2 at 2 ¶6, 6 ¶4, 8-9 ¶4, 12 ¶3, 15 ¶4, 18 ¶4, 22-23 ¶¶9-10, 25 ¶5, 30 ¶4, 39 ¶4, 45 ¶4, 52 ¶3; Dkt. 70-3 at 2 ¶5, 6 ¶3, 9 ¶3, 12 ¶4, 15 ¶3, 19 ¶3, 22 ¶3, 25 ¶5, 30 ¶3, 33 ¶4, 38 ¶3, 41-42 ¶4-5, 49 ¶3; Dkt. 70-4 at 2 ¶3, 7 ¶3, 15 ¶3, 19 ¶5, 23 ¶4, 27 ¶3, 34 ¶3, 38 ¶3, 41 ¶3, 44 ¶5, 48 ¶4, 55 ¶3; Dkt. 70-5 at 2 ¶3, 6 ¶4, 10 ¶3, 27 ¶4, 30 ¶5, 34 ¶3, 40 ¶4, 48 ¶4, 52 ¶3.

[32] 29 CFR § 516.3 states that the FLSA does not require employers to track the number of regular or overtime hours worked by employees who fall within the professional exemption. Dkt. 111 at 18.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

> With respect to employees working on fixed schedules, an employer may maintain records showing instead of the hours worked each day and each workweek as required by paragraph (a)(7) of this section, the schedule of daily and weekly hours the employee normally works. Also, (1) In weeks in which an employee adheres to this schedule, indicates by check mark, statement or other method that such hours were in fact actually worked by him, and (2) In weeks in which more or less than the scheduled hours are worked, shows that exact number of hours worked each day and each week.

29 CFR § 516.2(c).

DSHS generally used such "exception" time reporting when the DOL investigation occurred in 2006. SWs were assigned fixed schedules, and many SWs simply worked those schedules. Dkt. 67 ¶28. SWs who wanted to modify or flex their schedule (to work more or less than 40 hours within a week) were expected to notify their supervisors, obtain approval, and submit a leave request or overtime authorization form (that specified the hours worked or leave taken). *Id.* As DOL witnesses conceded, these timekeeping policies and processes complied with the law. Dkt. 69-4 at 10-11 (115:16-18, 125:1-2), Dkt. 69-3 at 27-29 (17:22-18:8, 22:11-21).

Nevertheless, at DOL's request, DSHS started the process of implementing a "positive" timekeeping system in July 2008.[33] SWs reported time and leave on paper (and, later, electronic) timesheets, which they signed and certified as accurate. Dkt. 170-2 at 2. DSHS also distributed reminders to SWs emphasizing that they were required to report all time they worked. Dkt. 170-4 at 2 ("It is important to remember when completing the established time and attendance record, overtime eligible employees must accurately record all of the **actual** hours worked and **actual** leave taken."). Since then, SWs have done just that.[34] As SW Sarah Jackson attests:

> DSHS policy requires that I report all time that I work and I do so. About one year ago, DSHS started requiring that everyone record their time on a time slip. Since then, I have recorded the actual time that I worked.

Dkt. 105-2 at 34 ¶6. Even DOL's own witnesses testify that they are accurately recording their

---

[33] Dkt. 67 ¶29 ("Employees now track and expressly report the number of hours they work each day."); Dkt. 170 ¶5 ("All [CA] employees designated as eligible to receive overtime began using the new timekeeping system on July 16, 2008. The remainder of DSHS began using the new timekeeping system in August 2008.").

[34] Dkt. 105-2 at 19 ¶7 ("I keep track of my time daily, and I make sure that I never work more than 40 hours in a week"), at 9 ¶14 (since starting in 2008, "I report my time on my time and attendance records"), at 41 ¶15 (same).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 12
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    time under the positive timekeeping system.[35] As SW Diane Irwin explains it (*id.* at 30 ¶12):

2         My supervisor trusts me and other [SWs] to keep track of our own time. We are
3         professionals and we have integrity….we can be trusted to record our time.

     Both the "exception" and "positive" timekeeping systems fully complied with 29 U.S.C.

4    § 211 and the implementing regulations in 29 CFR Part 516. Thus, the Court should rule as a

5    matter of law that DSHS's timekeeping approaches and systems are legally compliant.[36]

6    **C.      DSHS Fully Paid Many (If Not All) SWs For Any Overtime Hours They Worked**

7         For non-exempt employees, 29 U.S.C. § 207(a) requires that overtime be paid for "hours

8    worked"[37] in excess of 40 hours in a workweek. Thus, to establish an overtime claim, DOL has

9    the burden to demonstrate that SWs worked more than 40 hours per week and were not paid for

10   that time.[38] Moreover, DOL "bears the burden of proving that the evidence presented is

11   sufficiently representative of the non-testifying claimants, therefore Defendants need only point

12   out the absence of evidence to support [DOL's] case to prevail at summary judgment." *Westside*

---

14   [35] *E.g.*, Dkt. 86-3 at 16 ("Under the new system, if an emergency arises we take care of the emergency, fill out a
15   form to claim overtime and it will be paid" and "At this point the time sheets accurately reflect my use of flex
     time"); Dkt. 86-2 at 28 ("Since 2007, the caseloads are lower and the practice is changing. Now as a supervisor I
16   approve overtime for field work, and paper work is to be done during regular business hours. [SWs] are not to work
     more than 40 hours per week without pre-approval and are to flex it out in the same week and prior to accruing the
17   time."); Dkt. 86-3 at 4 ("Management's handling of time issues has been improving drastically.").
     [36] DSHS is not asking the Court to address or rule on whether all SWs properly recorded their time in these systems.
18   DSHS presented testimony from many SWs who confirm that they did. If a few still did not, this is an individual
     issue and cannot support DOL's global claim. *E.g.*, *Joza v. WW JFK LLC*, 2010 WL 3619551, *7 (E.D.N.Y. 2010)
19   (if time records are inaccurate "solely due to [an employee's] deliberate failure to accurately report the time [she]
     worked," then *Mt. Clemens* burden shifting does not apply and employee must provide specific hours worked).
20   [37] Activities count as hours worked if (1) they were primarily for the benefit of the employer, and (2) the employer
     knew or should have known about them. *See Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). If employees
21   fail to report or intentionally hide work activities, an employer is not responsible for paying for them. *Id.* at 1277-78;
     *Newton v. City of Henderson*, 47 F.3d 746, 748-50 (5th Cir. 1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646
22   F.2d 413, 414 (9th Cir. 1981). Employers also do not have to pay for certain activities that do not count as hours
     worked, such as driving to and from work and meal breaks. 29 CFR § 785.19 (meal periods), 29 CFR § 785.35
23   (home to work travel). Moreover, *de minimis* activities can be disregarded when determining hours worked. *Lindow
     v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984); 29 CFR § 785.48(a); Dkt. 69-4 at 20 (255:19-257:6) (short
24   phone calls and interruptions are not compensable).
     [38] *E.g.*, *Hertz v. Woodbury County Iowa*, 566 F.3d 775, 783 (8th Cir. 2009) ("it is the plaintiff's burden to show (1)
25   the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been
     properly paid"); *Rosano v. Township of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014); *Chao v. Westside Drywall, Inc.*,
26   709 F.Supp.2d 1037, 1068-69 (D.Or. 2010) ("The Secretary bears the burden of proving that the claimants in this
     FLSA action were not properly compensated for work performed.") (*citing Imada v. City of Hercules*, 138 F.3d
     1294, 1296 (9th Cir. 1998)).

---

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Drywall*, 709 F.Supp.2d at 1070-71 (dismissing DOL claims for occupations for which there was

no admissible evidence presented). Although DOL has testimony from some SWs in some

offices who claim that they are owed overtime for certain time periods,[39] DSHS has extensive

evidence from other SWs explaining that they and their co-workers accurately reported their time

and were fully paid for overtime worked. *See supra* fn. 3-4. As SW Shirley DeArmond attests:

> I have not had trouble flexing my time and doing my job within 40 hours even though it
> is a very fast paced job. As I see it, as professionals, it is our responsibility to manage our
> own time. It is pretty straightforward time management, and it can be done….
>
> I have never been pressured to work more than 40 hours, and I am paid for all the work I
> perform. There have been some rare occasions (not more than twice a year) when I have
> needed to work more than 40 hours. On those occasions, I requested overtime, and when
> it was approved, I was compensated for that overtime with comp time….
>
> Other [SWs] are also provided with comp time. In fact, I have observed some [SWs] who
> have taken advantage of comp time. They would be very inefficient with their time, work
> more than 40 hours, and then use comp time to take extended vacations. Now that
> [DSHS] is stricter on overtime and really keeps workers to just 40 hours a week,
> employees who used to game the system are upset they have lost this "perk."

Dkt. 105-2 at 19-20 ¶8-12. In an effort to narrow and focus this case, DSHS requests (at a

minimum) summary judgment dismissing DOL's overtime claims for those individuals, groups,

and offices where DOL has no evidence of unpaid overtime.

### 1.      Summary judgment should be granted in relation to 144 SWs where uncontested evidence establishes that they have no overtime claim

29 U.S.C. § 216(c) only allows DOL to bring claims for "affected" employees to recover

amounts "owing to such employee[s]," and further requires DOL to name each specific

"affected" employee as a "party plaintiff in the complaint." DOL thus has no statutory authority

to seek or obtain relief for employees who have been fully paid and are not "affected."

In its 2010 pleadings, DSHS identified 144 SWs who, by their own admission or by

DOL's concession, have no overtime claim because they did not work over 40 hours per week or

were paid for any overtime worked. Dkt. 70 ¶2-10 (and exhibits in Dkt. 70-2 to 70-8); Dkt. 90

---

[39] Here, there is no testimony regarding many offices, and the testimony provided is often equivocal, and hardly
suggests a global issue. *See supra* fn. 6-8.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 14
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

¶4-7 (and exhibits at 19-41); Dkt. 86-3 at 46-48 (DOL witness Cindy Dickson attesting she has

no overtime claim); Dkt. 105 ¶6 (and exhibits in Dkt. 105-2). As DOL's witnesses admit, these

SWs should not have been included in the lawsuit, and claims brought on their behalf should be

dismissed. Dkt. 70 ¶3, 5; Dkt. 69-4 at 29; Dkt. 69-3 at 33, 39. The claims for the 144 SWs should

thus be dismissed based on individualized evidence that they have no unpaid overtime.[40] Such

dismissal is warranted under 29 U.S.C. § 216(c) (limiting claims to "affected" employees), 28

U.S.C. § 1927 (prohibiting vexatious claims), and DOL's commitment that it is not suing for

SWs who have no unpaid overtime, Dkt. 54 at 3, n.1.[41] *See Etienne v. Inter-County Sec. Corp.*,

173 F.3d 1372, 1376 (11th Cir. 1999).

> **2.     Summary judgment should be granted with respect to DSHS offices where uncontested evidence establishes that their SWs have no claim**

DOL's own guidelines limit investigations to a single "establishment," which is, in this

case, a DSHS office.[42] This limit makes sense. As DSHS and DOL witnesses agreed, different

offices had different compliance experiences.[43] Thus, with its 2010 Motion, DSHS presented

testimony from SWs across an array of CA's 44 offices confirming that they did not work unpaid

overtime and have not observed others with such claims.[44]

---

[40] Representative testimony is not relevant here: it is a gap-filler for non-testifying witnesses and cannot supplant individual testimony. *See McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (if warranted, "the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees").

[41] The Court should note that when DOL amended Exhibit A, it deleted 48 of the 144 SWs (without disclosing the deletion). Dkt. 105 ¶5. DOL's act should be taken as an admission that those SWs have no claim. Regardless, in light of DOL's argument (Dkt. 97 at 5) that it is seeking relief for all SWs under 29 U.S.C. § 217, the 48 SWs are still implicated by the Complaint and any claims in relation to them should still be dismissed on summary judgment.

[42] Dkt. 69-2 at 17-18 (DOL FOH § 51a12(a), (b) states: "[o]rdinarily, an investigation should cover one, and only one establishment" and "a location or site not in close vicinity or proximity to the principal or top supervising office… constitutes a branch establishment and shall be treated as a separate investigative unit"); Dkt. 69-2 at 22 (DOL training materials explaining that investigator interviews should "Cover all shifts, work schedules and locations if applicable"; Dkt. 69-4 at 27 (DOL District Director Hart testifying that variations by "office, supervision, position, [and] duties" "are all issues that can come up").

[43] Dkt. 67 at 4-5 (CA Deputy Director testifying: "day-to-day work demands…can vary widely"); Dkt. 69-4 at 14 (DOL 30(b)(6) witness admitting that DOL's investigation indicated "substantial" differences among locations); Dkt. 69-3 at 31 (DOL Assistant Director Wojahn testifying that one location could be in compliance while another is not); Dkt. 86-4 at 28 (administration of flex time and overtime varied among DSHS offices and supervisors); Dkt. 86-3 at 8 (flex time practices varied).

[44] Dkt. 70-2 at 2 (Tumwater), 14 (Mount Vernon), 25 (Kelso), 29 (Port Angeles), 51 (Goldendale); Dkt. 70-3 at 2 (Vancouver), 6 (Omak), 15 (Richland), 18 (Yakima), 29 (Moses Lake), 38 (Toppenish), 45 (Seattle – King West);

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 15
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The parties seem to agree that there are no claims in two offices. DSHS presented SW testimony that there was no unpaid overtime in the Omak office, Dkt. 70-2 at 48; 70-3 at 5, and DOL admitted its investigation found no unpaid overtime there, Dkt. 69-4 at 14. Similarly, for the Tacoma office, DSHS presented evidence from six SWs that no unpaid overtime exists. Dkt. 70-2 at 5-7, 8-10, 38-40; Dkt. 70-3 at 11-13; Dkt. 70-4 at 43-46, 47-49. DOL presented two declarations from SWs who worked in Tacoma, and both confirmed that they were fully paid and did not work unpaid overtime in that office. Dkt. 86-2 at 43-44 ¶ 13-15; Dkt. 86-3 at 47-48 ¶ 9-11. Because the evidence from both parties demonstrates that no claims for unpaid overtime exist in Omak and Tacoma, the Court should dismiss claims of SWs who worked in those offices.

In addition to these offices, DSHS's 2010 Motion presented testimony from SWs who worked in other offices and who testified that there was no unpaid overtime in those offices. *See supra* fn. 44. In 2010, DOL did not rebut this testimony for most offices. Dkt. 90 ¶ 8. As Rule 56(e) and the courts make clear, when a party fails to come forward with evidence on an issue (especially when the party has the burden of proof), summary judgment dismissing claims of SWs who worked in those offices is appropriate.[45] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### 3. Summary judgment should be granted with respect to all SWs who did not have a "case-carrying" assignment

DOL's complaint limits this action to case-carrying SWs. Dkt. 1 at 1. In fact, DOL's investigator concluded that there was "a distinction between case-carrying [SWs] and non-case-

---

Dkt. 70-4 at 6 (Wenatchee), 11 (Everett), 14 (Arlington/Smokey Point), 18 (Long Beach), 33 (Monroe), 37 (Ellensburg), 47 (Tacoma), 54 (Lynnwood), 64 (Shelton); Dkt. 70-5 at 1 (Bremerton), 16 (Seattle – Delridge), 18 (Walla Walla), 26 (Sunnyside), 51 (South Bend); Dkt. 70-6 at 6-10 (Seattle – Graham), 11-12 (Aberdeen), 15-19 (Spokane); Dkt. 105-2 at 2-4 (Forks), 18-21 (Salmon Creek).

[45] The absence of evidence regarding many of the offices is a serious concern. The seminal Ninth Circuit case regarding DOL representative testimony, *Ho Fat Seto*, 850 F.2d at 587-88, dealt with a single location with 28 employees. Courts in the Ninth Circuit have stressed that representative witnesses must be truly representative of each job category and each location. *E.g.*, *Perez v. Oak Grove Cinemas, Inc.*, 68 F.Supp.3d 1234, 1250 (D.Or. 2014) ("[a]t a minimum…when employees work in more than one job category, the testimony must be representative of the individuals within each category" and "[b]ecause of the different jobs performed [and] their different locations" the Secretary could not rely on the proposed representative witnesses). Other courts agree. *E.g.*, *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991) (requiring testimony showing employee experience in each position and each location). *Clark v. Centene Co. of Texas, L.P.*, 2015 WL 2250387, *16 (W.D.Tex. 2015) (in a collective action, dismissing non-testifying employees in one office when no representative testimony was presented for that office).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 16
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

carrying [SWs]" and that "non-case-carrying [SWs] did not have significant amounts of uncompensated overtime." Dkt. 108 ¶3-4. There should thus be no dispute that non-case-carrying SWs should not be involved in this case or listed on Exhibit A.

Unfortunately, DOL included a broad swath of such SWs in amended Exhibit A. At times in discovery, DSHS has provided DOL with lists that included both case-carrying and non-case-carrying SWs; however, after a year of exchanges between former counsel for DOL and DSHS, DSHS provided DOL with a list of 1965 case-carrying SWs in November 2009. Dkt. 98 ¶14 (former DOL counsel Jeannie Gorman); Dkt. 106 ¶6-25 (former DSHS counsel Kara Larsen). Despite receipt of this November 2009 list, DOL included about 100 SWs who were not on that list in amended Exhibit A.[46] Those individuals were not included in the list provided by DSHS because they were not case-carrying SWs. Dkt. 106 ¶24-25. For example, DOL included "intake" SWs that its investigator admits are not case-carrying and have no claim. Dkt. 108 ¶3. In order to clarify the record and remove individuals who the parties agree do not belong in this case, the Court should enter an order dismissing the claims of all non-case-carrying SWs (*e.g.*, any SWs listed on Exhibit A who were not on the November 2009 list).

### 4. The Court should summarily reject DOL's proposed representative testimony or set an early hearing to determine its validity

In *In re Perez*, 749 F.3d 849, 859 (9th Cir. 2014) ("*Perez*"), the Ninth Circuit denied DSHS access to discovery in relation to most SWs based on DOL's representation that it will present its case through representative testimony under *Mt. Clemens Pottery*[47] from 150 SWs, explaining that DOL's case will depend on the proposed testimony from those 150 witnesses:

---

[46] A list of most of these individuals is set forth at Dkt. 54-2 at 28.

[47] In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court explained the shifting burdens of proof in FLSA cases where employers fail to maintain records of hours worked by employees. If records are not properly maintained, the Court held that, to recover unpaid overtime, a plaintiff must show that: (1) work was performed for which an employee did not receive proper pay; and (2) there is sufficient evidence to show the amount and the extent of the work as a matter of just and reasonable inference. *Id.* at 687-88. Thus, a plaintiff's initial burden under *Mt. Clemens* is to prove that (1) records for an employee were not properly maintained, (2) the employee performed work for which he or she did not receive proper pay, and (3) there is sufficient evidence for the court to reach a just and reasonable inference about the amount of unpaid work performed by the employee. *Id.* If a plaintiff meets this initial burden, the burden then shifts to the employer to show either (1) the precise amount of work performed; *or* (2) evidence to negate the reasonableness of the inference to be drawn from the evidence. *Id.*

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 17
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Whether the Secretary can successfully prove his allegations at trial under *Mt. Clemens Pottery* will depend almost entirely on the 150 employees who make up his representative sample. It is with their testimony that the Secretary will be required to show "as a matter of just and reasonable inference" that all 2,000 affected employees' work conditions are substantially similar so as to merit class-wide relief.

*Id.* at 858. As *Perez*'s reference to "substantially similar" work conditions makes clear, DOL may use representative testimony only in narrow circumstances. "Virtually all of the cases using representative testimony involve a fairly small employee population, a limited number of employee positions, and uniform work tasks."[48] Moreover, representative testimony is not appropriate if there is substantial disputed testimony regarding liability.[49]

Courts have reached the same conclusion about representative testimony in other contexts. For example, the Ninth Circuit found that a district court abused its discretion when it certified state wage claims brought on behalf of a class of mortgage consultants because there were fact-intensive inquiries "regarding individual variations among ... job duties and experiences." *In re Wells Fargo*, 571 F.3d 953, 956 (9th Cir. 2009). Moreover, the U.S. Supreme Court, in *Walmart v. Dukes*, 131 S.Ct. 2541 (2011), and *Comcast v. Behrend*, 133 S.Ct. 1426 (2013), has cautioned that overreaching when seeking representative determinations is improper and presents serious due process concerns. *See*, *e.g.*, *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 588 (S.D.N.Y. 2013) ("reading *Dukes* and *Comcast* together, it appears that there are due process implications for defendants, which render the so-called 'trial by formula' approach, whereby representative testimony is utilized to determine damages for an entire class, inappropriate where individualized issues of proof overwhelm damages calculations").

DOL has not met its burden of proof regarding representative testimony. DOL is pursuing claims for 2,000 SWs, not a small, homogeneous group. Those SWs work in different programs,

---

[48] *Reich v. Southern Maryland Hosp., Inc.*, 43 F.3d 949, 952 (4th Cir. 1995) (rejecting judgment because DOL was seeking relief at a single hospital for a "variety of departments, positions, time periods, shifts, and staffing needs," but its testimony from 54 employees was not representative of those various areas).

[49] *E.g.*, *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F.Supp.3d 1295, 1304-5 (N.D.Ga. 2014) ("representative testimony regarding hours worked to determine an amount of damages is inappropriate when the issue of liability, i.e. whether or not any damages actually exist, is still in question in regards to certain Plaintiffs").

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 18
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

are spread across multiple regions and 44 offices, and report to different supervisors and

managers. Dkt. 67 ¶5-7. DSHS has presented evidence showing that the day-to-day workloads

and tasks of SWs vary greatly by type of case, caseload, work group, location, supervisor, and

schedule. *E.g.*, Dkt. 67 ¶7-18 ("the day-to-day work demands that Social Workers encounter can

vary widely" and SWs "spend their days in different settings, their responsibilities vary from day

to day, and they work different schedules"); *supra* fn. 3. Moreover, DOL's witnesses confirm

that work duties and obligations vary substantially depending on these factors.[50] When such

differences exist, representative testimony is not appropriate and no reasonable inference may be

drawn. *E.g.*, *DeSisto*, 929 F.2d at 793 ("an employee can [] represent other employees only if all

perform substantially similar work").[51]

      In addition, the sheer number of SWs subject to this action (2,000) and who have already

admitted they have no claim (144) demonstrates that a group inference is inappropriate. As the

Ninth Circuit explained in *Perez*, 749 F.3d at 853, DOL has the burden of proving that its

representative witnesses' "hours worked are a fair approximate for **any other social worker**

employed by DSHS" "regardless of whether [an affected employee] is in Bremerton or

Bellingham or Richland or Spokane" (emphasis added). *See also Westside Drywall*, 709

F.Supp.2d at 1070-71. DOL has provided no evidence that its 150 witnesses are representative of

or fungible with "any other social worker" from the pool of 2,000 SWs in this action. In fact,

---

[50] *E.g.*, Dkt. 86-2 at 10 (court calendars are not as extensive at CPS, while CWS work presents more emergencies); Dkt. 86-3 at 2 (some SWs fulfill duties in each program area, while others focus on adoptions); Dkt. 86-3 at 8 (expectations differ depending on the supervisor); Dkt. 86-2 at 22-23 (SWs may work a standard schedule, 4 10 hour days, or a variable days); 84-4 at 30 (same).

[51] *See also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) (finding no reasonable inference because it was not clear where half of employees worked, if employees were in the same job group, or how much extra time employees spent at work); *Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456, 467-68 (S.D.N.Y. 2011). In *Zivali*, representative testimony was not allowed in an FLSA collective action because there was "substantial variation as to a key issue" in the case: the "use of adjustment feature to capture otherwise unreported work." *Id.* at 467. Some opt-in plaintiffs "testified that they understood the adjustment feature; some acknowledged they regularly received payment for work reported through the adjustment feature; some testified they felt comfortable asking for adjustments while other did not; some admitted that adjustment were promptly made when requested; some testified that they did not report time because they did not believe it was compensable; and some conceded that they performed off-duty work for their own benefit without informing management." *Id.*

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 19
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   many of DOL's witnesses admit that other SWs had no unpaid work and were different than

2   them.[52] Likewise, DSHS witnesses attest that they and their co-workers had no unpaid overtime.

3   *See supra* fn. 3-4. For example, SW Amy Boswell testified:

4       DSHS policy requires that I report all the time I work, and I am paid for all the work I
        perform. I report my time on my time and attendance records. No one in management has
5       ever told me that I had to work unpaid time….

6       Since I started with DSHS in 2008, I have worked overtime about five times. I reported
        the time, and I was compensated for it….

7       Based on my observations and my own experience, if some employees claim that they are
        not paid for all the work they perform, that would not be typical of other employees….

8   Dkt. 105-2 at 9-10 ¶14-17. Likewise, SW Hannah Palmquist attests:

9       I am allowed to "flex" my time within the week so I do not work more than 40 hours in
10      the week. I never work more than 40 hours a week.

11      At my last job with a non-profit, I worked overtime constantly and I burned out. That is
        why I am very conscientious in this job to not work more than 40 hours a week…. You
        must set boundaries, which I and my co-workers have been able to do.

12      I have not observed any of my co-workers in my unit working overtime either. My
13      supervisor is very supportive of us not working more than 40 hours a week. He has very
        strong family values and encourages us to spend time with our families. He arrives on
14      time and leaves on time, and expects us to do the same. He encourages us to take care of
        ourselves so we do not burn out. …

15      I have only worked overtime once. This was when I attended academy for training, and
        the travel time put me into overtime. I was compensated for that time.

16      If some workers claim they are not paid for all the time they work, that would not be
17      typical of me or other [SWs]. I sit in the middle of the CPS unit and I observe employees
        flexing their time, but I have not observed or heard of people working unpaid overtime.

18  Dkt. 105-2 at 41-42 ¶12-18. All of this individualized testimony has one unifying theme: each

19  SW is different and the 150 witnesses are not a fair approximate for "any other social worker"

20  listed on Exhibit A as required for representative testimony under *Perez*, 749 F.3d at 853.[53]

21  ---

22  [52] *E.g.*, Dkt. 86-2 at 37 ("I know that some co-workers of mine only work 40 hours a week"), at 8 ("There were a few [SWs] who never came in on weekends"); Dkt. 86-3 at 10 ("Many [SWs] are unable to contribute the additional work hours (past their 40 hours per week) due to family obligations, etc."); *see also supra* fn. 6-8.

23  [53] *E.g.*, *Oak Grove Cinemas*, 68 F.Supp.3d at 1250 ("Because of the different jobs performed by all employees, their different locations, and that the witness employees regularly worked directly with only a handful of other Exhibit A employees, [DOL] cannot rely on six witness employees' testimony to establish the number of overtime hours worked by all [35] Exhibit A employees."); *Southern Maryland Hosp.*, 43 F.3d at 951 (rejecting DOL's limited testimony, finding "no reported cases where such a small ratio of representative (testifying) employees has been used to justify an award to non-testifying employees"); *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (rejecting FLSA collective determination because there was no methodology for selecting the "representative" witnesses and no evidence that the selected witnesses were representative of all employees).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 20
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

In these circumstances (where DOL's proposed representative testimony is woefully inadequate), the Court should reject that proposed testimony and either dismiss DOL's action[54] or limit DOL's claims to those individuals who submit testimony.[55] Alternatively, DSHS requests that the Court hold an evidentiary hearing (or bifurcated trial) to determine whether DOL's 150 witnesses are in fact representative of the 2,000 SWs now listed on Exhibit A.

**D.    DOL's Lawsuit Is Barred By Sovereign Immunity**

This Court lacks jurisdiction over DSHS for claims under the FLSA because DOL's lawsuit violates the principles of federalism and the Tenth Amendment.

**1.    *National League of Cities* recognized that State sovereignty under the Tenth Amendment limits the application of the FLSA to State governments**

The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively."

After Congress amended the FLSA in 1974 to cover a majority of state and local government employees, the Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 840 (1976), held that state sovereignty under the Tenth Amendment restricted federal legislative power and limited the FLSA's application to public employees. In reaching that decision, the Court inquired whether the FLSA intruded upon "functions essential to [the] separate and independent existence" of the States and whether the areas sought to be regulated by the federal government were "traditional aspects of state sovereignty." *Id*. at 845, 849. The FLSA infringed on traditional governmental functions because the power to set the wages and hours of those employed to carry out governmental functions was an attribute of sovereignty and thus essential

---

[54] *See Perez*, 749 F.3d at 853 ("If the Secretary is not able to carry his burden, his case may not proceed.").

[55] *E.g.*, *Von Friewalde v. Boeing Aerospace Operations*, 2009 WL 2391400, *10 (5th Cir. Aug. 4, 2009) (affirming rejection of representative testimony and dismissal of FLSA claims of 78 of 80 claimants, including all claimants who submitted no evidence in opposition to summary judgment); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 621 (8th Cir. 1991) (rejecting representative testimony and requiring individualized proof because of differing work patterns); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88-89 (2d Cir. 2003) (affirming judgment as a matter of law against four non-testifying plaintiffs); *Marshall v. Hope Garcia Lancarte*, 632 F.2d 1196, 1198-99 (5th Cir. 1980) (denying relief to unidentified employees who did not testify, and rejecting conclusions of a compliance officer as "extreme" and not supported by the evidence).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 21
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    to the separate and independent existence of the states. *Id*. at 840-56.

2         **2.**     **The political safeguard principles outlined in *Garcia* are no longer binding**

3         In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), the Court

4    reversed itself, holding that Congress had the power to apply the FLSA to public employees.

5    Rather than look to "traditional governmental functions," the *Garcia* Court found that a Tenth

6    Amendment violation would only occur when "the procedural safeguards inherent in the

7    structure of the federal system" had failed to protect a State from the encroachment of the federal

8    government. *Id*. at 552. Stated differently, the Tenth Amendment's "limits are structural, not

9    substantive - i.e., that States must find their protection from congressional regulation through the

10   national political process, not through judicially defined spheres of unregulable state activity."

11   *South Carolina v. Baker*, 485 U.S. 505, 512 (1988) (construing the holding of *Garcia*).

12        *Garcia*'s holding, that a national legislative process provides adequate protection of state

13   sovereignty, established a broad theoretical basis for permitting extensive federal regulation of

14   state sovereign actions. In the federalism cases following *Garcia*, however, the Court refrained

15   from applying this broad political safeguard theory and instead furthered the demarcation

16   between the enumerated powers of the federal government and the sovereignty of the states. *E.g.*,

17   *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *New York v. United States*, 505 U.S. 144 (1992);

18   *United States v. Lopez*, 514 U.S. 549 (1995); *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).[56]

19   Thus, instead of upholding the rule of *Garcia* when enforcing state sovereignty's limitation on

20   claims of federal power, the Supreme Court revived *National League of Cities* by assuming that

21   the political process was inadequate to safeguard state governments.

---

22   [56] For example, in *New York v. United States*, 505 U.S. 144, the Court considered the constitutionality of the "take
23   title" provisions of the Low-Level Radioactive Waste Policy Amendments Act of 1985 and held that the legislative
     program unlawfully "commandeered" state governments into the service of federal regulatory purposes. The
24   majority noted that the balance between federal interests and state sovereignty has "travelled an unsteady path," and
     suggested that *Garcia* had been an abnormality in that it represented a "recent[] depart[ure] from this approach." 505
25   U.S. at 160, 178. Instead of engaging in a *Garcia* line of analysis, such as whether the national political process
     worked properly or whether New York engaged in that process, the Court increased the parameters of state
26   sovereignty. *See also Printz v. United States*, 521 U.S. 898 (1997) (extending *New York* by concluding that Congress
     violated the Tenth Amendment in compelling states to implement federal mandates).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Specifically, the Court in *Alden v. Maine*, 527 U.S. 706, 714 (1999), directly contravened *Garcia* by stating that "[t]he States 'form distinct and independent portions of the supremacy, no more subject, within their respective spheres, to the general authority than the general authority is subject to them, within its own sphere.'" Because the federal judiciary governs the traditional boundaries between state sovereignty and federal power, without deferring to Congress, this ruling and others reflect the reasoning and holding of *National League of Cities*, 426 U.S. at 852-54. *See also United States v. Lopez*, 514 U.S. 549, 552 (1995); *United States v. Morrison*, 529 U.S. 598, 611, 617-18 (2000); *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 844-47 (4th Cir. 1999), *aff'd, Morrison*, 529 U.S. 598.[57] Thus, post-*Garcia* jurisprudence is wholly inconsistent with the political safeguard principle (upon which *Garcia*, 469 U.S. at 554, relies) that the defense of state sovereignty must be mounted from within the political process at the federal level and not within the court system. Through consistent logic, the Supreme Court has overruled *Garcia*, and thereby reinstated *National League of Cities*. *New York*, 505 U.S. at 159 (noting that Tenth Amendment challenges "discern[ ] the core of sovereignty retained by the States") (citing *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 287-88 (1981), which applied *National League of Cities*).[58]

### 3. DOL's lawsuit violates state and dual sovereignty principles under *National League of Cities* and the Constitution

DOL's lawsuit violates *National League of Cities*' principle of state sovereignty because it: (1) regulates "states as states," (2) concerns attributes of state sovereignty, and (3) impairs the state's ability to structure integral operations in areas of traditional governmental functions. *National League of Cities*, 426 U.S. at 852-54. As this Court has held (Dkt. 111 at 2-3), SWs perform fundamentally local services throughout communities in Washington State by

---

[57] Comprehensive judicial review of state sovereignty principles is further supported by cases applying heightened scrutiny to federal actions that have invoked the 14th Amendment's Enforcement Clause to override state sovereignty, which provides less sovereignty protection than the Tenth Amendment. *E.g., Horne v. Flores*, 129 S.Ct. 2579, 2595-96 (2009); *City of Boerne v. Flores*, 521 U.S. 507, 527-36 (1997).

[58] For a complete analysis of *Garcia*'s demise see Chemerinsky, Erwin, The Assumptions of Federalism, 58 Stan. L. Rev. 1763 (April 2006); Yoo, John, The Judicial Safeguards of Federalism, 70 S. Cal. L. Rev. 1311 (1996).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 23
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

identifying the needs of children and families, arranging services to support them, and assuring the safety and well-being of children. By providing basic services to Washington's most vulnerable individuals, DSHS and its SWs are at the core of traditional local government functions. Nevertheless, DOL's lawsuit would dictate how the State assigns and manages the duties and caseloads of SWs, what it collectively bargains with the SWs' union, how it has SWs record time, and when it pays overtime to SWs, thus directly interfering with DSHS's ability "to structure employer-employee relationships." *National League of Cities*, 426 U.S. at 851.

Similarly, DOL's lawsuit violates the system of "dual sovereignty" in which the Constitution vests specific powers in both sovereigns, forbids one from interfering with the other, and limits Congress from using its powers to diminish sovereign immunity. *See Fed. Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002) (dual sovereignty is defining feature of the constitutional blueprint); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000). By filing this action and seeking tens of millions of dollars in damages (Dkt. 69-3 at 20), DOL's claims (if successful) would require Washington to divert funds and make policy decisions about how to allocate limited resources, thereby diminishing sovereignty by stripping away the State's ability to control its own funds. The ability of a State to control its own treasury was at the heart of the sovereign immunity holding in *Alden*.[59] DOL's lawsuit also seeks an injunction so that it may dictate future actions by the State with regard to its employees. Dkt. 1. Moreover, because the Washington State Legislature authorized Washington to engage in collective bargaining with its employees over wages, benefits and working conditions,

---

[59] *Alden*, 527 U.S. at 743 (states may assert sovereign immunity to FLSA claims brought in state courts by their own citizens). The Court found that Congress' ability to authorize suits against a State "create[s] staggering burdens" that are "not contemplated by constitutional design" and "would pose a severe and notorious danger to the States and their resources." *Alden*, 527 U.S. at 750. Similarly, DOL seeks damages on behalf of employees who would directly benefit from a judgment, the State's treasury and resources are equally burdened, the State's ability to make decisions as a sovereign as how to apportion funds is similarly affected, and DOL's claims thus have the same practical consequences as if the citizens had brought the suit in their own capacity. Thus, there is no meaningful difference between DOL's lawsuit for damages and a suit by individual SWs, which is barred by sovereign immunity under the Supreme Court's holding in *Alden*, 527 U.S. at 743.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 24
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  application of the FLSA impinges on the State's sovereign authority to bargain with and regulate

2  the wages of state employees. *See, e.g.*, RCW 41.56, RCW 41.80, RCW 47.64.

3        DOL's infringement of State sovereignty is an especial affront in this case. DOL's

4  investigation was admittedly inadequate and in violation of its own guidelines and the results of

5  that investigation did not warrant the state-wide claim that was asserted here. Nevertheless, DOL

6  moved forward, with a survey document in an attempt to cover for the investigation's

7  inadequacies. The heart of DOL's claim is that SWs (who have been required to certify the

8  accuracy of their time to the State each week) have certified false information to the State, have

9  worked unrecorded time, and are entitled to overtime. DSHS would have hoped to address the

10  concerns of these employees and assure that they complied with federal and State expectations

11  going forward. However, DOL has refused to work cooperatively with DSHS to pay individuals

12  who may have a claim and, thus, prevented the State from managing its own employees and

13  resources. If there is a case that cries out for sovereign immunity, this is it. Thus, the Court

14  should hold that DOL's lawsuit is barred by sovereign immunity and dismiss this matter.

15  **E.    Injunctive Relief Is Not Warranted In This Case**

16        DOL seeks injunctive relief under 29 U.S.C. § 217; however, such relief is not warranted

17  in this case. Section 217 allows entry of an injunction "for cause shown," which "means such a

18  cause as would move a court of equity to protect the employees against future violations or

19  threats to violate." *Walling v. T. Buettner & Co.*, 133 F.2d 306, 307-08 (7th Cir. 1943) (reversing

20  injunction because employer was attempting to comply in good faith). DOL has the burden of

21  proving the need for an injunction. *Mitchell v. Hertzke*, 234 F.2d 183, 186 (10th Cir. 1956)

22  ("Equity will not do a useless or vain thing, and in the absence of some likelihood or probability

23  that the violations will recur, the court is fully justified in refraining from entering an empty

24  decree."). DOL cannot meet its burden in this case.

25        Initially, there is no evidence that DSHS engaged in behavior that requires injunctive

26  relief. Although DOL attacks DSHS's use of schedules and exception reporting, 29 CFR §

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 25
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

516.2(c) expressly allowed this recordkeeping approach. Moreover, DOL investigated State agencies using the same time reporting system in the past and never identified a violation. Madden Dec. Ex. H (116:20-23, 118:12-16). Even if federal agencies are allowed to cite employers for following regulations that have fallen on disfavor, such citations do not suggest an intent to violate the law. Here, to assure compliance, DSHS modified its entire timekeeping system to more effectively track and pay overtime. Dkt. 67 ¶ 29; Dkt. 170 ¶ 4-5. Finally, DSHS's attempts to minimize overtime (due to State budgetary concerns) and consistent practice of paying overtime when it is worked demonstrate DSHS's past efforts to comply. Even if DOL can establish some individual claims, they do not show that DSHS acted improperly or should be enjoined.[60] *See Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1081 (1st Cir. 1995) (denying injunction because employer did not act in bad faith or willfully).

Second, injunctive relief is unnecessary because there is no danger of future violation. "Employers who are acting in good faith and endeavoring to comply with the law should not be harassed by the processes of a court of equity coercing them to do what they are willing to do and are trying to do voluntarily." *Walling*, 133 F.2d at 308. Here, DSHS has demonstrated a willingness and commitment to comply with the law. DSHS adopted a positive timekeeping system and is committed to ensuring that its employees record and are paid for all overtime hours they work. Dkt. 67 ¶ 29-30; Dkt. 170 ¶4-5. An injunction is thus unwarranted. *E.g.*, *Martin v. Coventry Fire Dist.*, 981 F.2d 1358, 1362 (1st Cir. 1992) (affirming denial of injunction because there was no threat of future violations by employer).

Third, the Court should hold as a matter of equity that injunctive relief cannot be awarded. Parties seeking injunctive relief "must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one

---

[60] In addition, injunctive relief is unnecessary because DOL has an adequate remedy at law to recover any alleged unpaid overtime pursuant to 29 U.S.C. § 216(c).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 26
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

tainted with inequitableness"). Similarly, this Court "may appropriately withhold [its] aid where the plaintiff is using the right asserted contrary to the public interest." *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492 (1942), *abrogated on other grounds*, *Illinois Tool Works Inc. v. Ind. Ink, Inc.*, 547 U.S. 28, 42-43 (2006); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545-46 (1987) (Ninth Circuit erred by focusing on single statutory interest; court must balance all competing public interests). In this case, DSHS has a legitimate public interest in limiting its overtime obligations (which is dictated by State financial considerations). Moreover, DSHS has an interest in identifying any SWs who are working unauthorized overtime, both in order to pay them (if legally warranted) and to assure that such conduct does not continue. These steps are key to FLSA compliance. Although DOL claims to be concerned about compliance with FLSA obligations, it has refused to share information (who has overtime claims and the amount of those claims) that DSHS needs to address any alleged violations. Although DOL may have the legal right to withhold those names, it is fundamentally unfair and inequitable for DOL to ask the Court to compel DSHS's compliance with the law while withholding the information necessary for DSHS to assure such compliance. Whether viewed as unclean hands, estoppel, or a balancing of public interests, DOL interference with DSHS attempts to comply should bar injunctive relief.

Finally, DOL's request for injunctive relief should be denied as stale and moot. The DOL investigation giving rise to the request occurred over nine years ago and DSHS modified its timekeeping systems in compliance with DOL's requests over seven years ago. There is thus no basis for imposing an injunction at this time.

**F.    The Court Should Limit This Case To SWs Currently Listed On Exhibit A**

At the same time DSHS is attempting to narrow and focus this action, DOL is suggesting that it may attempt to expand the case beyond the 2,000 SWs currently listed in Exhibit A. As discussed herein, this Court should not allow further expansion of the litigation.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**1.    The Ninth Circuit has defined the scope of this litigation based on factual representations from the DOL**

When DOL petitioned for a writ of mandamus in this case, DOL made a series of factual representations to the Ninth Circuit. Among other things, DOL reported that (1) the case involved 2,000 SWs listed on Exhibit A, (2) DOL had information concerning 400 of those SWs from interviews or its survey ("informants"), (3) DOL had no specific information about SWs who were not informants (and had no way of gathering such information), (4) 150 of the 400 informants agreed to be witnesses, thus waiving the government informant's privilege, (5) the other 250 informants would not be witnesses in the proceeding, and (6) the identities of the 250 non-testifying informants would be revealed if DOL answered certain neutral discovery requests because DOL could not provide any information about the remaining 1,600 SWs on Exhibit A. *Perez*, 749 F.3d at 851-54. The Ninth Circuit thus concluded:

> Whether the Secretary can successfully prove his allegations…will depend almost entirely on the 150 employees who make up his representative sample. It is with their testimony that the Secretary will be required to show…that all 2,000 affected employees' work conditions are substantially similar so as to merit class-wide relief…. DSHS knows all the details it seeks with respect to these key employees because the Secretary has turned over their 150 statements *in total*. Moreover, DSHS already had and has in its possession the information it needs to compare these 150 employees against the remaining 1,850 affected employees.

*Id.* at 858. In granting mandamus, the court thus relied on DOL's representations about the number of affected employees on Exhibit A, the number of witnesses DOL would use, and the fact that DOL had no ability to provide information about non-informants. *Id.*

DOL should be bound by its factual representations to the Ninth Circuit. *E.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Chao v. Pacific Stucco, Inc.*, 2006 WL 2432862, *2 (D.Nev. Aug. 21, 2006) (DOL bound by representation made to Magistrate Judge). Moreover, the Ninth Circuit's reliance on these facts in its directive binds the parties and this Court. *E.g.*, *Kellington*, 217 F.3d at 1092-93 (discussing rule of mandate). Put simply, the Ninth Circuit defined the future scope of this litigation (based on DOL's representations) as involving

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   the testimony of 150 SWs and the question of whether those 150 SWs are representative of all

2   2,000 SWs on Exhibit A.

3          In addition, by its own admission, DOL has no evidence to support an expansion of this

4   case. DOL represented to the Ninth Circuit that it has no information beyond what it gathered

5   over seven years ago from its 400 informants and that it has no information about other SWs.[61]

6   If DOL has no information about other SWs, then it has no factual basis for including new SWs

7   (who were not even working as SWs at the time of DOL's evidence) in Exhibit A. DOL cannot

8   choose to lack knowledge when ignorance benefits it and then choose to have knowledge at other

9   times when knowledge is beneficial. DOL's lack of information beyond the 400 informants was

10   accepted by the Ninth Circuit, and DOL cannot now claim otherwise. That lack of knowledge

11   means that DOL does not have any factual basis for modifying its complaint.

12        **2.**     **The Court has the right to manage case schedules, and any amendment to Exhibit A would be after the deadline for amending parties and pleadings**

13

14          This Court has entered a number of scheduling orders establishing deadlines for this case.

Dkts. 11, 20, 162. Such deadlines are intended to expedite the disposition of cases, discourage

15   poor case management, and avoid wasteful practices. Fed. R. Civ. P. 16(a). Parties are bound to

16   respect and comply with such orders. Fed. R. Civ. P. 16(b)(4). Of consequence here, Rule

17   16(b)(3)(A) states that a scheduling order "must limit the time to…amend the pleadings." The

18   Court's scheduling orders have done exactly that. In Dkt. 11, the Court established a deadline for

19   filing a motion to join parties of January 8, 2009, and a deadline for amending pleadings of

20   January 20, 2009. After granting a motion to extend the deadlines, the Court entered Dkt. 20 with

21

---

22  [61] *E.g.*, DOL Petition for Writ of Mandamus (6/21/13) at 4 (DOL "has such information for only approximately 400 current and former employees"), at 8 ("the only employees for whom the Secretary possesses responsive

23  information are informants"), at 16 (DOL "has responsive information only for the informant employees"), and at 17 ("the only responsive information that the Secretary actually has is for the informants themselves, i.e., for those

24  employees who have provided the Secretary with information"); DOL Reply on Mandamus (11/8/13) at 2 (DOL "does not have information regarding overtime hours worked for all 2,000 employees listed in Exhibit A; the approximately 400 informants are the only source of information that the Secretary has.… Therefore, the only

25  information responsive to these interrogatories that the Secretary has is for informants."); DOL Brief (6/25/14) at 9 (DOL "has information only for the 400 employees who gave statements or responded to questionnaires") (excerpts

26  from these appellate materials are attached as Ex. I to the Madden Dec.).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 29
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  a deadline for filing a motion to join parties of October 22, 2009, and a deadline for amending

2  pleadings of November 2, 2009. Despite these deadlines, DOL waited until March 29, 2010, to

3  file its initial motion to amend Exhibit A by adding 500 additional SWs as party plaintiffs. Dkt.

4  97. That motion was not resolved at the time this Court initially granted summary judgment to

5  DSHS, but, after the Ninth Circuit remanded the case, the Court granted DOL's motion. Dkt.

6  161. The Court then issued a new scheduling order with a deadline for filing a motion to join

7  parties of May 22, 2013, and a deadline for amending pleadings of June 3, 2013. DOL missed

8  these deadlines, filing a motion on June 3 to add unidentified SWs as party plaintiffs to Exhibit

9  A.[62] The Court has not revised these deadlines since 2013. And, as each of the scheduling orders

10  explained: "These are firm dates that can be changed only by order of the Court." Dkt. 162 at 2.

11      Because the deadlines for adding parties and amending the pleadings have long since

12  passed, this Court has the authority to deny any amendments on that basis alone. *E.g.*, *Jackson v.*

13  *Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (even though defendant had not fully

14  disclosed all information, plaintiffs were not entitled to amend their complaint belatedly); *Joe*

15  *Lujan Enters., Inc. v. Elec. Contracting Corp.*, 848 F.2d 118, 121 (9th Cir. 1988) (affirming

16  denial of untimely motion to amend). Moreover, the Court should deny any amendments under

17  the circumstances here. Scheduling orders serve an important purpose: they allow parties to

18  know the scope and nature of the litigation. The dispute in this case centers on DSHS's exception

19  timekeeping system that was discontinued in July 2008, and involves testimony of informants

20  gathered from 2007 to 2009. *E.g.*, *Perez*, 749 F.3d at 851-52. In 2013, this Court allowed DOL to

21  amend Exhibit A to add all SWs employed during this period. Dkt. 161. Thus, any SWs that

22  DOL could possibly seek to add at this late date were not employed as SWs during the times

23  relevant to this litigation. As discussed *infra*, injecting a new class of SWs, who worked under a

24  different timekeeping system, and whose claims can only extend back two years from any

25

26  _____

[62] The deadline for filing "any motion to join parties" was May 22, not June 3. Moreover, the deadline to amend pleadings was June 3, yet DOL's motion was not even noted until June 21.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 30
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  amendment (*e.g.*, as of this filing, no earlier than October 8, 2013) would defeat the objective of

2  focusing this litigation and would effectively require the parties to prepare for a totally different

3  dispute.

### 3.     A motion to amend cannot be justified at this late date

4

5  Even if not barred by *Perez* and no deadlines existed, any request to amend by DOL

6  should be denied on its merits. The Court has broad discretion in determining whether to grant

7  leave to amend, considering factors such as undue delay, bad faith, futility of amendment, and

8  prejudice. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). Any

9  one of these factors can warrant denial of leave; and they all favor denial in this case.

10  Initially, any further amendment of Exhibit A should be denied based on undue delay.

11  The calendar itself evidences the extraordinary "delay" here. DOL's original complaint was filed

12  on July 31, 2008, well over seven years ago. This delay is "undue" (*i.e.*, there is no evidence of

13  diligence by DOL in bringing these matters to the Court). As previously discussed, DOL has

14  repeatedly allowed the joinder and amendment deadlines to pass without taking timely action to

15  amend. For example, DOL's 2010 motion to amend was brought four months after the Court's

16  deadline; DOL waited over six months after the Ninth Circuit remanded in September 2012

17  before renewing its request to amend in February 2013; DOL brought another untimely motion

18  in June 2013; DOL took no action for twelve months after the Ninth Circuit remanded in July

19  2014 until the Court directed action in July 2015; and, even now, DOL has not taken prompt

20  action to amend. Such inordinate delay warrants the denial of any further amendments.[63]

21  Second, the nature and timing of DOL's requests to amend suggest possible bad faith.

22  DOL waited to file its belated motion in 2010 until after the discovery cutoff and with a hearing

---

[63] *E.g.*, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (amendment denied where motion was filed months after deadline for amendment and facts underlying amended complaint were available before the deadline); *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (if amendment sought "after the opposing party has timely moved for summary judgment, a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint."); *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126-27 (1st Cir. 2006) (citation omitted) (court properly denied motion to amend complaint filed after defendant's summary judgment motion).

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 31
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    date set after the dispositive motions deadline. In 2013, DOL again delayed until after the

2    Court's established deadlines and then filed an ambiguous motion that did not even attach the

3    proposed amended pleading. Then, in August 2015, in response to the Court's direction for the

4    parties to confer and file a joint status report, DOL has refused to indicate whether it will seek a

5    further amendment of Exhibit A and articulated no factual basis for such an amendment. Madden

6    Dec. ¶2. Regardless, in light of DOL's representations to the Ninth Circuit that the agency has no

7    information beyond the 400 statements and questionnaires it gathered from 2007 to 2009, it is

8    difficult to imagine how DOL could (in good faith) seek to add new party plaintiffs with claims

9    from 2013 to 2015 (or later). The Court should not countenance such gamesmanship.

10           Third, any amendment would be futile. Of consequence here, any SWs added to Exhibit

11   A at this time would only have claims preserved for the two years prior to their addition. 29

12   U.S.C. § 216(c), 255. As the Ninth Circuit has clearly held, the statute of limitations continues to

13   run on any Section 216 claims until employees are added as party plaintiffs in Exhibit A. *See*

14   *Donovan v. Crisostomo*, 689 F. 2d 869, 875-76 (9th Cir. 1982) (applying statute of limitations to

15   bar claims of employees that DOL did not list in Exhibit A as required by Section 16, even if a

16   separate remedy may be available under Section 217, because DOL "must suffer the

17   consequences of that strategic decision"). Thus, the earliest claims that could be added by a new

18   amendment to Exhibit A would be claims starting in October 2013. As it represented to the Ninth

19   Circuit, however, DOL only has information about its 400 informants (which information was

20   gathered from 2007 to 2009) and does not have any information in relation to other SWs

21   (including employees who moved into SW positions after 2010 when this action was initially

22   dismissed). *See supra* fn. 61. DOL thus has no evidence to support the addition of claims from

23   2013 to 2015. Instead, the uncontroverted evidence establishes that, in July 2008, DSHS changed

24   from an exception timekeeping system to a positive timekeeping system. Dkt. 170 ¶4-5. With

25   that change, DSHS sent repeated messages emphasizing that SWs were expected to report all

26

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 32
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

time worked. *Id.* ¶6-11. And, DOL's own witnesses attest that they (and other SWs) were accurately reporting and being paid for hours worked under that new system. *See supra* fn. 6, 35. When a party's own witnesses testify against its newly asserted claims, those claims are clearly futile and should not be allowed.

Finally, allowing an amendment at this late date would prejudice DSHS.[64] Any further amendment of Exhibit A will complicate rather than narrow this action. DOL's investigation and initial findings were focused on overtime claims for a time-period "between 2006 and 2008" when DSHS used an exception timekeeping system. *Perez*, 749 F.3d at 851. The addition of overtime claims for a time-period from October 2013 to the present for a group of SWs who were not employed as SWs from 2006 to 2008 would inject entirely new claims, unrelated issues, and "party plaintiffs" into this action even though DSHS has already implemented a litigation plan, deposed the primary DOL witnesses, and filed dispositive motions. This is the embodiment of prejudice. *E.g.*, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (denying leave because changed legal theory would result in prejudice).

**G.    The Court Should Bar Any Claims Of SWs For Any Periods More Than Two Years Prior To Their Listing On Exhibit A**

29 U.S.C. § 216(c) provides that employees must be expressly named in the complaint to become "party plaintiffs" in the action. And, 29 U.S.C. § 255 provides for a two-year statute of limitations for non-willful violations. Wage claims arise on a pay period by pay period basis, and any claims that arise prior to this two-year window are barred. *Crisostomo*, 689 F.2d at 875-76.

In this case, DOL has proposed evidence from and seemingly seeks damages for SWs for periods well beyond this two-year window. *E.g.*, Dkt. 86-4 at 24-28 (testimony from Karen Patton, who stopped working for DSHS in 2005). As discussed in Section F *supra*, this would also impact the viability of claims for any proposed additions to Exhibit A. For purposes of

---

[64] While prejudice is clearly demonstrated, it is not required for this Court to deny amendment. In *Loehr*, 743 F.2d at 1319, the Ninth Circuit affirmed the denial of leave to amend even though it found no "great prejudice" and did not identify any evidence regarding that factor.

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 33
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

clarity and to narrow the case, the Court should hold that (for each SW listed on Exhibit A) the statute of limitations bars any claims under Section 216 that arose more than two years prior to his or her listing on Exhibit A.

### IV.    CONCLUSION

For the reasons stated herein, DSHS respectfully requests the Court to enter summary judgment dismissing DOL's claims.

Dated this 8th day of October, 2015.

By: s/ Patrick M. Madden
Patrick M. Madden, WSBA #21356
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel:  (206) 623-7580
Fax: (206) 623-7022
Email:  patrick.madden@klgates.com

Charlynn R. Hull, WSBA #37093
Assistant Attorney General
Office of the Attorney General
Labor and Personnel Division
P.O. Box 40145
Olympia, WA  98504-0145
Tel:  (360) 586-4538
Fax: (360) 664-4170
Email:  CharlynnH@atg.wa.gov

Attorneys for Defendant State of Washington,
Department of Social and Health Services

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 34
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on October 8, 2015, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4  registered CM/ECF users in this action.

5
                                    By:  s/ Patrick M. Madden
6                                   Patrick M. Madden, WSBA #21356
                                    K&L Gates LLP
7                                   925 Fourth Avenue, Suite 2900
                                    Seattle, WA 98104-1158
8                                   Tel:  (206) 623-7580
                                    Fax: (206) 623-7022
9                                   Email:  patrick.madden@klgates.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT - 35
Case No. 3:08-cv-05479-BHS

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022