UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HILDA L. SOLIS, Secretary of Labor,
United States Department of Labor,

                    Plaintiff,

v.

STATE OF WASHINGTON
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

                    Defendant.

CASE NO. C08-5479 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

      This matter comes before the Court on Defendant State of Washington

Department of Social and Health Services' ("DSHS") motion for summary judgment

(Dkt. 191). The Court has considered the pleadings filed in support of and in opposition

to the motion and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

      On July 31, 2008, Plaintiff Elaine L. Chao,[1] Secretary of Labor, United States

Department of Labor ("DOL"), filed a complaint against DSHS. Dkt. 1.  The DOL seeks

to enjoin Defendant from alleged violations of the Fair Labor Standards Act of 1938, as

---

[1] New Secretary Hilda L. Solis has been substituted.

amended, 29 U.S.C. § 201, *et seq*. ("FLSA"), and "for the recovery of a Judgment against Defendant for unpaid overtime compensation due Defendant's employees." *Id*. at 1.  The suit was brought on behalf of DSHS's case-carrying Social Worker IIs ("SWIIs") and case-carrying Social Worker IIIs ("SWIIIs") (collectively "SWs"), which the DOL named in a list attached to the complaint. *Id*., Exh. A ("Exhibit A").

On February 24, 2010, DSHS filed a motion for summary judgment arguing in part that SWIIs and SWIIIs qualified for the learned professional exemption to the FLSA's overtime laws. Dkt. 65.  On April 26, 2010, the Court agreed and granted DSHS's motion.  Dkt. 111.  The DOL appealed this ruling and the case was stayed pending appeal.  On September 9, 2011, the Ninth Circuit issued an opinion concluding "that DSHS has not met its burden of showing that its social workers come within the 'learned professional' exemption, and that the district court should not have granted summary judgment in its favor." *Solis v. Washington*, 656 F.3d 1079, 1088–89 (9th Cir. 2011).

After remand, the parties renewed a discovery dispute regarding releasing the identities of some complaining social workers.  The Court issued an order requiring release of the discovery.  DOL disagreed with the Court and filed a petition for writ of mandamus.  The case was again stayed.  The Ninth Circuit granted the petition further clarifying the government informant's privilege and when the privilege must give way. *In re Perez*, 749 F.3d 849 (9th Cir. 2014).

After the petition was granted, the stay was lifted and the Court held a scheduling conference.  Dkt. 188.  During the conference, the parties discussed the possibility of a

1  settlement conference as well as the existence of dispositive issues that may narrow the

2  scope of the case.  The Court concluded that dispositive issues should be addressed first

3  and set a briefing schedule.[2]  On October 8, 2015, DSHS filed a renewed motion for

4  summary judgment.  Dkt. 191.  On November 2, 2015, responded.  Dkt. 193.  On

5  November 13, 2015, DSHS replied.  Dkt. 194.

6  ## II. FACTUAL BACKGROUND

7  The majority of the relevant facts are set forth in *Solis* and the Court's previous

8  order on summary judgment.  In addition to those facts, DSHS has submitted some

9  additional documentary evidence as well as portions of deposition transcripts, which will

10  be directly cited if relied upon.

11  ## III. DISCUSSION

12  DSHS moves for summary judgment on the following issues:  (1) many (if not all)

13  SWs fell within the learned professional exemption; (2) DSHS's recordkeeping methods

14  fully complied with the law; (3) DSHS fully paid many (if not all) SWs for any overtime

15  hours they worked; (4) DOL's lawsuit is barred by sovereign immunity; and (5)

16  injunctive relief is not warranted.  Dkt. 191 at 9–10.

17

18

19

20  [2] DOL argues that the parties should be bound by the Court's September 22, 2009
21  scheduling order and therefore DSHS should not be allowed to raise any dispositive issue that
   was not raised by the original dispositive motion deadline.  Dkt. 193 at 32–34.  There is simply
22  no authority for such a proposition given the procedural history of this matter.  The Court invited
   DSHS's motion and will consider all of the issues raised.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The

1    nonmoving party may not merely state that it will discredit the moving party's evidence

2    at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

3    *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

4    nonspecific statements in affidavits are not sufficient, and missing facts will not be

5    presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

6    **B.    Tenth Amendment**

7          DSHS argues that the "Court lacks jurisdiction over DSHS for claims under the

8    FLSA because DOL's lawsuit violates the principles of federalism and the Tenth

9    Amendment."  Dkt. 191 at 29.  The Tenth Amendment provides that "powers not

10   delegated to the United States by the Constitution, nor prohibited by it to the States, are

11   reserved to the States respectively."  U.S. Const. amend. X.  In *Garcia v. San Antonio*

12   *Metro. Transit Auth.*, 469 U.S. 528 (1985), the Court held that Congress had authority

13   under the Commerce Clause to impose the FLSA on state and local employees.  Although

14   DSHS recognizes that *Garcia* "has not been expressly overruled," DSHS argues that

15   *Garcia's* underlying principles have slowly been eroded and are no longer binding.  Dkt.

16   191 at 29–33.  The Court, however, declines DSHS's invitation to implicitly overrule

17   binding Supreme Court precedent.  Therefore, the Court concludes that *Garcia* is binding

18   precedent and denies DSHS's motion on the immunity issue.

19   **C.    Professional Exemption**

20          The FLSA requires that employers pay overtime compensation for all hours

21   worked in excess of forty hours in a week unless a particular exemption applies.  29

22   U.S.C. § 207(a)(1).  "FLSA exemptions are to be 'narrowly construed against . . .

1   employers and are to be withheld except as to persons 'plainly and unmistakably within

2   their terms and spirit.'" *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (*quoting Arnold v.*

3   *Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).  "An employer who claims an exemption

4   from the FLSA bears the burden of demonstrating that such an exemption applies." *Klem*

5   *v. Cnty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).

6         The FLSA includes an exemption from the overtime requirement for "any

7   employee employed in a bona fide executive, administrative, or professional capacity

8   . . . ."  29 U.S.C. § 213(a)(1).  Under DOL regulations, the term "employee employed in a

9   bona fide professional capacity" means an employee whose primary duties require

10  "knowledge of an advanced type in a field of science or learning customarily acquired by

11  a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a)(2)(i).

12  The section entitled "Learned Professionals" provides that:

13        (a) To qualify for the learned professional exemption, an employee's
    primary duty must be the performance of work requiring advanced

14  knowledge in a field of science or learning customarily acquired by a
    prolonged course of specialized intellectual instruction. This primary duty

15  test includes three elements:
          (1) The employee must perform work requiring advanced

16  knowledge;
          (2) The advanced knowledge must be in a field of science or

17  learning; and
          (3) The advanced knowledge must be customarily acquired

18  by a prolonged course of specialized intellectual instruction.

19  29 C.F.R. § 541.301 ("learned professional exemption").

20        In this case, DOL does not contest whether SWs meet the first two elements of the

21  test.  In fact, the Court concluded earlier that DOL "conceded" these elements.  Dkt. 111

22

1    at 14 n.4.  Thus, the Court will address only the third element, which the regulations

2    further describe as follows:

3            The phrase "customarily acquired by a prolonged course of
         specialized intellectual instruction" restricts the exemption to professions

4        where specialized academic training is a standard prerequisite for entrance
         into the profession. The best prima facie evidence that an employee meets

5        this requirement is possession of the appropriate academic degree . . . .
         [T]he learned professional exemption is not available for occupations that

6        customarily may be performed with only the general knowledge acquired
         by an academic degree in any field, with knowledge acquired through an

7        apprenticeship, or with training in the performance of routine mental,
         manual, mechanical or physical processes. The learned professional

8        exemption also does not apply to occupations in which most employees
         have acquired their skill by experience rather than by advanced specialized

9        intellectual instruction.

10   29 C.F.R. § 541.301(d).

11           With these standards in mind, the Court turns to the parties' disputes.

12           **1.      Solis**

13           The first issue the Court must address is the scope or impact of the Ninth Circuit's

14   decision in *Solis*.  DOL argues that *Solis* foreclosed the issue of whether the SWs

15   positions qualify for the learned professional exemption.  Dkt. 193 at 7.  DOL, however,

16   fails to cite any language from *Solis* to support this proposition.  On the other hand,

17   DSHS argues that the Ninth Circuit simply vacated the Court's grant of summary

18   judgment based on the evidence presented at that time. Dkt. 191 at 14–15.  In other

19   words, DSHS contends that *Solis* "does not foreclose a different outcome (on summary

20   judgment or at trial) based on different facts or aspects of the professional exemption."

21   *Id*. at 15.  The Court concludes that DSHS has the better argument.  In *Solis*, the court

22   concluded that "DSHS has not met its burden of showing that its social workers come

1  within the 'learned professional' exemption, and that the district court should not have

2  granted summary judgment in its favor."  *Solis*, 656 F.3d at 1088–89.  In light of this

3  language, the Court will consider whether DSHS has met its burden at this time.

4      **2.    Particular SWs**

5      Under this subsection, the threshold issue is how to apply the exemption to the

6  employees.  While the Court will address each of DSHS's arguments, a hypothetical

7  illuminates the underlying principles of the exemption.  On one hand, consider SW Amy

8  ("SWA") who is a case-carrying social worker with a master's degree in social work and

9  always works more than forty hours per week to adequately assess and protect the

10  children assigned to her.  On the other hand, consider SW Brad ("SWB") who does not

11  have an advanced degree, meets the minimum requirements for the SW position in

12  Washington, and never works more than forty hours per week.  The learned professional

13  exemption does not apply to either SWA or SWB because the "exemption is not available

14  for *occupations* that customarily may be performed with only the general knowledge

15  acquired by an academic degree in any field."  29 C.F.R. § 541.301(d) (emphasis added);

16  *see also Solis*, 656 F.3d at 1088 ("the 'learned professional' exemption applies to

17  positions that require 'a prolonged course of specialized intellectual instruction,' not

18  positions that draw from many varied fields.").  With these two ends of the spectrum in

19  mind, the Court turns to DSHS's individual arguments.

20      First, DSHS argues generally that the exemption applies to particular employees.

21  Dkt. 191 at 14–16.  The Court agrees with DSHS that social workers *may* be considered

22  exempt professionals (*Solis*, 656 F.3d at 1086) and that DOL's opinion letters provide

1    some language in support of an "employee-by-employee" consideration of the exemption

2    (Dkt. 69-2 at 2–6).  DSHS, however, fails to show any authority for a social-worker-by-

3    social-worker analysis of the exemption.  DSHS essentially requests the Court to rule that

4    SWA is exempt from overtime because she possesses the master's degree while SWB,

5    without the relevant degree, is not exempt even if he performs the *exact same* duties as

6    SWA.  This proposition is illogical and would be impracticable in practice.  If SWA and

7    SWB have the same duties and caseloads, how can one be exempt from overtime while

8    the other is entitled to overtime?  Therefore, the Court denies DSHS's motion to apply

9    the exemption on an individual employee basis.

10          Second, DSHS argues that the Court should consider "heightened hiring

11   standards."  DSHS, however, fails to recognize that the exemption is based on the duties

12   of the job.  Even if a DSHS office subjected SWA to higher scrutiny during the hiring

13   process, there is neither evidence nor argument that case-carrying SWs perform different

14   duties.  Therefore, the Court denies DSHS's motion on the issue of allegedly heightened

15   hiring requirements.

16          Third, DSHS argues that SWs who admit that they meet the requirements of the

17   exemption are exempt.  Dkt. 191 at 19.  In the absence of evidence that different SWs

18   perform different duties, DSHS's argument is without merit.  For example, if DSHS can

19   establish a "subcategory" of SWs who are assigned the more difficult cases because they

20   have advanced degrees in social work, then the argument may have merit.  DSHS has not

21   done so.  Moreover, this argument raises the question of why DSHS is hiring social

22   workers without advanced degrees if such a degree is "necessary for and integral to" the

1   performance of the relevant duties.  Regardless, there is simply a lack of evidence in the

2   record to support this argument.  Therefore, the Court denies DSHS's motion to apply the

3   exemption in these circumstances.

4          Finally, DSHS raises the issue of non-case-carrying SWs.  Dkt. 194 at 8–9.  DSHS

5   contends that these employees were assigned different duties and rarely, if ever, worked

6   more than forty hours per week.  *Id*.  It appears that the parties either have reached or

7   should be able to reach an agreement on these employees and the solution requires

8   deleting particular names from the list of claimants.  Therefore, the Court orders the

9   parties to meet and confer on this issue and denies DSHS's motion.

10  **D.     Paid SW**

11         DSHS argues that the Court should grant summary judgment on the claims of 144

12  SWs where the uncontested evidence establishes that they have no overtime claim.  Dkt.

13  191 at 22.  This argument implicates the second major issue in this case, which is liability

14  via representative testimony.  "[T]he [*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680

15  (1946),] standard allows district courts to award back wages under the FLSA to non-

16  testifying employees based upon the fairly representative testimony of other employees."

17  *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988).

18                Once the employees establish a prima facie case, the burden shifts to
                  the employer to come forward with evidence of the precise amount of work
19                performed or evidence to negate the reasonableness of the inference to be
                  drawn from the employees' evidence.
20
    *Id*. (citing *Mt. Clemens Pottery*, 328 U.S. at 687–88).
21

22

1    In this case, DSHS has submitted evidence that some employees have "no

2  overtime claim."  Dkt. 191 at 22.  DOL counters that "these documents do not

3  unequivocally establish that no overtime is due to the individual employees."  Dkt. 193 at

4  19.  DOL reasons as follows:

> [A] wide range of SWs report working more than 40 hours in one work
> week and "flexing" that time into the next week. As wages owed for
> overtime is calculated on a workweek basis, these statements all reflect the
> existence of overtime in at least some workweeks for the individuals cited.
> *See* 29 U.S.C. § 207(a); *see also* 29 C.F.R. 778.103. Accordingly, statements
> by those individuals that they did not work overtime, or did not work
> uncompensated overtime are, at a minimum, unpersuasive.

9  *Id*. (footnote omitted).  The Court agrees with DOL to the extent that the statement that

10  one did not work "uncompensated overtime" is a legal conclusion from a lay person.

11  Such a statement requires knowledge of what is legally compensable overtime, and

12  "flexing" hours may not be sufficient compensation as a matter of law.  If a worker

13  worked sixty hours one week and twenty hours the next, DOL correctly asserts that,

14  despite an average of forty hours per week, the sixty-hour week may result in

15  compensable overtime.  Even if the flexing occurred on "rare occasions" as DSHS

16  asserts, the rare occasion is a possible violation of law and DSHS is not entitled to

17  summary judgment.

18    On the other hand, the statement that one "did not work more than 40 hours per

19  week" is a statement of fact as is the statement that when one did work more than forty

20  hours per week, the individual requested overtime and was paid overtime.  For example,

21  Shirley DeArmond attests as follows:

22

ORDER - 11

> I keep track of my time daily, and I make sure that I never work
> more than 40 hours in a week.
>
> * * *
>
> I have never been pressured to work more than 40 hours, and I am
> paid for all the work I perform. There have been some rare occasions (no
> more than twice a year) when I have needed to work more than 40 hours.
> On those occasions, I requested overtime, and when it was approved, I was
> compensated for that overtime by comp time.

Dkt. 105-2 at 19-20.  These are undisputed facts that Ms. DeArmond has no claim for a violation of the FLSA.

Faced with these facts, DOL argues that this evidence does not relieve DSHS's failure to keep accurate records and that DOL can prove wages owed by approximation. Ms. DeArmond, however, states that she kept track of her own time and, in the absence of contrary evidence, DOL is unable to establish any reasonable inference that Ms. DeArmond's testimony is based on DSHS's allegedly faulty time records.  Moreover, Ms. DeArmond submitted this testimony under penalty of perjury and, absent evidence that she did not make this declaration of her own free will, the Court will accept the declaration as true.  As such, any theory of approximation should result in zero compensable hours of overtime. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Therefore, the Court grants DSHS's motion for summary judgment on DOL's claims for any SW who states under oath that he or she did not work more than forty hours in any work week and for any SW who states under oath that he or she was fully compensated for any hours over forty hours per week.  The parties should be able to

1    agree on which SW's claims should be dismissed.  On the other hand, if DOL has

2    evidence controverting such statements, summary judgment is denied as to the claims of

3    those employees.

4    **E.      Representative Testimony**

5            DSHS argues that the Court should "summarily reject DOL's proposed

6    representative testimony or set an early hearing to determine its validity."  Dkt. 191 at 25.

7    The Court agrees with DSHS to the extent that DOL appears to be trying to fit a square

8    peg into a round hole or, at the very least, has failed to identify a coherent plan for how

9    the disclosed witnesses will adequately represent all of the claimants.  *See*, *e.g*., *Purnell v.*

10   *Sunrise Senior Living Mgmt., Inc.*, No. CV10-00897 JAK, 2012 WL 1951487, at *7

11   (C.D. Cal. Feb. 27, 2012) ("the use of exemplar plaintiffs in *McLaughlin v. Ho Fat Seto*

12   succeeded because all the employees who had been denied back wages worked in the

13   same facility under nearly identical conditions."); *Reich v. S. Maryland Hosp., Inc.*, 43

14   F.3d 949, 952 (4th Cir. 1995) (for claims of more than 3,000 employees, district court

15   should consider "the different positions, departments, shifts, pay periods, and time

16   periods involved.").  At some point, the Court will request a trial plan, but only after

17   sufficient notice and an opportunity to be heard on the subject.  At this time, however, the

18   Court will adhere to the Ninth Circuit's conclusion that DOL should have the opportunity

19   to prove its case at trial.  *In re Perez*, 749 F.3d at 858.  Therefore, the Court denies

20   DSHS's motion on this issue.

21

22

**F.  Time Keeping Systems**

DOL alleges that DSHS violates provisions of the FLSA "by failing to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment . . . ." Dkt. 1, ¶ 5.  Prior to August 2008 and during DOL's investigation, DSHS implemented an "exception" time keeping system, which a DSHS director describes as follows:

> Under this method, overtime eligible employees were assigned a regular schedule, and many Social Workers simply worked this schedule. Those who wished to modify or flex their schedule were responsible for notifying their supervisor and submitting a leave request or overtime authorization form if they worked either less than their scheduled 40 hours or more than their scheduled 40 hours.

Dkt. 67, Declaration of Sharon Gilbert, ¶ 28.  DOL identified issues with this method and, in response, DSHS "implemented a new 'positive' timekeeping system [where employees] now track and expressly report the number of hours they work each day." *Id.*, ¶ 29.

In the current motion, DSHS requests a ruling that its two time keeping methods are legally compliant.  Dkt. 191 at 19–21.  In response, DOL contends that "DSHS's records of hours worked are inaccurate and incomplete."  Dkt. 193 at 13.  DSHS argues that DOL fails to address the specific issue DSHS raised because DSHS "only seeks a ruling on the legality of the systems, not whether employees accurately reported their time."  Dkt. 194 at 9.  The Court agrees with DSHS.  While it is unclear what impact such a ruling has on DOL's claim, DOL has failed to identify any flaw in either system.  "No particular order or form of records is prescribed by the regulations . . . ."  29 C.F.R. §

1   516.1(a).  As such, DOL has failed to show that a system of setting a regular schedule

2   and requiring documented exceptions to that schedule violates any statute or regulation.

3   Similarly, DOL has failed to show that having employees track and report work hours

4   violates any statute or regulation.  Therefore, the Court grants DSHS's motion on the

5   legality of its timekeeping systems.  Whether DSHS's records are accurate or complete

6   remains unresolved.

7   **G.    Currently Listed SWs**

8          DSHS argues that the Court should limit this case to the SWs currently listed on

9   Exhibit A to the complaint.  Dkt. 191 at 35.  DOL counters that this issue is neither

10  appropriate nor ripe for summary disposition.  Dkt. 193 at 28.  The Court agrees with

11  DOL.  If the issues arise in the course of this proceeding, then the Court will evaluate the

12  parties' positions under the appropriate rules of procedure and standards whether DOL

13  shall be granted leave to amend.  Therefore, the Court denies DSHS's motion on this

14  issue.

15  **H.    Two-Year Bar and Injunctive Relief**

16         DSHS argues that the Court should enforce a two-year statute of limitations for

17  any SWs' claim for wages.  Dkt. 191 at 41–42 (citing 29 U.S.C. §§ 216(c), 255).  DOL

18  almost concedes this issue by stating that "claims under section 16 of the Act *might* be

19  barred, while claims under section 17 would not."  Dkt. 193 at 32 (emphasis added).

20  DOL, however, fails to support the "might be barred" statement with any argument or

21  authority.  Upon review of the relevant authority, DSHS has shown that claims under

22  section 216(c) are limited to two years from the date of identifying the particular

1   employee.  *Donovan v. Crisostomo*, 689 F.2d 869, 873–75 (9th Cir. 1982).  Therefore,

2   the Court grants DSHS's motion on this issue.

3        With regard to injunctive relief, DSHS moves for summary judgment on DOL's

4   request for injunctive relief.  Dkt. 191 at 33–35.  DSHS, however, concentrates solely on

5   the request for injunctive relief to prevent prospective violations of the FLSA.  *Id*.  DOL

6   has not only requested this type of relief but has also requested relief to prevent the

7   continued withholding of unpaid overtime.  Dkt. 1, ¶ VII.  While DSHS has shown that

8   DOL has little to no evidence to support recent timekeeping or overtime violations,

9   DSHS has failed to show an absence of evidence on injunctive relief for withholding

10  overtime pay.  Therefore, the Court denies DSHS's motion on injunctive relief in its

11  entirety.

## IV. ORDER

13       Therefore, it is hereby **ORDERED** that DSHS's motion for summary judgment

14  (Dkt. 191) is **GRANTED in part** and **DENIED in part** as stated herein.  The parties

15  shall meet and confer and submit a plan on how this case will proceed no later than

16  March 22, 2016.

17       Dated this 8th day of March, 2016.

BENJAMIN H. SETTLE
United States District Judge